IMAGINEERING, INC.

v.

SUPERINTENDENT OF INSURANCE, et al.

Supreme Judicial Court of Maine.

Argued May 23, 1991.
Decided July 26, 1991.

Alfred C. Frawley, Peter D. Lowe (orally), Brann & Isaacson, Lewiston, for plaintiff.

Harold C. Pachios (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for NCCI.

Robert A. Wake (orally), Asst. Atty. Gen., Augusta, for Superintendent of Insurance.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

The Superintendent of Insurance [1] (Superintendent) and the National Council on Compensation Insurance (NCCI) appeal from a judgment entered by the Superior Court (Knox County, *Kravchuk, J.*) reversing a decision of the Superintendent classifying Imagineering, Inc.'s payroll for workers' compensation insurance rating purposes. Directly reviewing on appeal the Superintendent's decision and order, we find no reversible error and, accordingly, we vacate the Superior Court's judgment.

Imagineering, Inc. produces and sells outdoor furniture marketed under the tradename Weatherend Estate Furniture. Imagineering's business is presently conducted from three separate facilities, all located in Rockland. Raw lumber is sawed and milled into furniture parts at 3 Gordon Drive, the furniture parts are assembled and finished at 6 Gordon Drive and the finished furniture is displayed and sold at 374 Main Street.

Like all employers in the State of Maine, Imagineering pays workers' compensation insurance premiums based on a percentage of its payroll. The amount of the premium is determined in accordance with a nationwide uniform payroll classification system developed and administered by NCCI, a nationwide advisory organization that represents insurance carriers in ratemaking matters. The terms and rules governing the uniform system, together with amend-

---

1. *See* 24–A M.R.S.A. § 201.

ments that bring it into compliance with Maine law, are published in NCCI's Basic Manual of Workers' Compensation Insurance Classifications (Basic Manual). The classification codes are described in detail in a reference book known as the Scopes of Basic Manual Classifications (Scopes Manual). Although developed and administered by NCCI, the rules contained in the Basic Manual and the Scopes Manual are equivalent to administrative regulations because they are subject to the approval and periodic review of the Superintendent of Insurance, 24–A M.R.S.A. § 2364(1) and (3) (1990), and have been incorporated by reference into Bureau of Insurance Regulations. *See, e.g.*, Bureau of Ins. Rules, ch. 440, subch. I, § 4(D) (Mar. 20, 1988).

Prior to September 1988, Imagineering's entire furniture manufacturing operation was classified under Code 2883 (furniture manufacturing)[2] and its retail store on Main Street was classified under Code 8044 (store: furniture and driver). In addition, Imagineering's outside sales persons and design and clerical employees were assigned standard exception classifications in accordance with Basic Manual Rule IV(B)(2).[3] Imagineering was paying high workers' compensation insurance premiums for the portion of its payroll classified under Code 2883 because furniture manu-

facturing is considered a high-risk occupation.

In an attempt to lower its workers' compensation insurance rates, Imagineering painstakingly bifurcated its furniture manufacturing business by moving all of its milling equipment and personnel to 3 Gordon Drive and its less dangerous assembly equipment and personnel to 6 Gordon Drive. Although it continued to operate as a single corporation, Imagineering began to maintain separate payrolls for each operation and was careful not to crosstrain any of its employees. Because assembly constitutes by far the largest portion of Imagineering's payroll, is less hazardous and, thus, receives a lower premium rate than furniture manufacturing, Imagineering hoped that a separate classification for the assembly operation would significantly lower its worker compensation expenses.

In May 1988, Imagineering's workers' compensation insurance agent asked NCCI to inspect Imagineering's operations and reevaluate its workers' compensation rate classification in light of the changes made to the business. An NCCI inspector concluded that the operations should be separately classified with the milling operation at 3 Gordon Drive classified under Code 2883 and the assembly operation at 6 Gordon Drive under Code 2881 (furniture assembly).[4] Subsequently, Imagineering's in-

---

**2.** The Scopes Manual provision on Code 2883 states:

> Code 2883, a "not otherwise classified" classification, is applied to those insureds who process rough or surfaced lumber, plywood or fiberboard into finished products such as those specified by the above cross reference or those products enumerated in this scope. This code contemplates the manufacture of furniture and frame parts which are assembled into chairs, buffets, dining room sets, dressers, chests, beds, tables, couches, china closets and other furniture. Code 2883 further contemplates the finishing of such furniture by sanding or buffing, followed by the application of the stains, varnishing, lacquer or paint....

Basic Manual Rule IV(C)(3)(f) states that "[a] classification designated [not otherwise classified] shall apply only if no other classification more specifically describes the insured's business."

**3.** Basic Manual Rule IV(B)(2) provides:

> **Standard Exception Classifications**
> Some occupations are common to so many businesses that special classifications have been established for them. They are called standard exception classifications. Employees within the definition of a standard exception classification are not included in a basic classification unless the basic classification specifically includes those employees.

The standard exception classifications are clerical office employees, drafting employees, drivers, chauffeurs and their helpers and outside salespersons, collectors or messengers. Basic Manual Rule IV(B)(2)(a)–(d).

**4.** The Scopes Manual provision on Code 2881 provides in pertinent part:

> Code 2881 applies to insureds who receive furniture parts such as tabletops, table legs, chair parts, bedstands and other wood furni-

surance carrier, Maine Bonding and Casualty Co., conducted its own inspection of the business, concluded that the single Code 2883 had been correct and asked NCCI to review the matter. In September 1989, NCCI retracted its bifurcated classification, agreeing with Maine Bonding that Code 2883 best describes the entire business because "[e]ven though the assembly-finishing operation is performed at separate location, it is not considered a separate and distinct business from the cutting-milling location." NCCI reinstated the Code 2883 classification for the entire business.

Imagineering sought administrative review of NCCI's reclassification before the Superintendent of Insurance. A formal hearing was held pursuant to 24–A M.R.S.A. §§ 229–36 and 2320 (1990); 5 M.R.S.A. §§ 9051–9064 (1989 & Supp.1990); and Bureau of Ins. Rules, ch. 350 (Nov. 5, 1984), with Imagineering, Maine Bonding and NCCI appearing as parties. On April 20, 1990, the Superintendent issued a decision and order upholding the Code 2883 classification.

Imagineering then sought judicial review in Superior Court pursuant to 24–A M.R.S.A. § 236 (1990), 5 M.R.S.A. §§ 11001–11007 (1989) and M.R.Civ.P. 80C. The Superior Court reversed the Superintendent's decision and ordered that the milling operation receive a Code 2735 (furniture milling)[5] classification and the assembly operation a Code 2881 classification. The court concluded, based upon its own reading of the uniform classification rules, that Imagineering had created "different environments which result in exposure to different associated risks" and, therefore, engages in "separate undertak-. ings or enterprises" for the purposes of the uniform classification scheme. This appeal followed.

The Superintendent and NCCI contend that the Superintendent correctly applied the classification rules and that its decision should not have been disturbed by the Superior Court. We agree.

■■■ Because the Superior Court acted as an intermediate appellate court, we review the Superintendent's decision directly. *Huard v. M.S.R.S. Bd. of Trustees*, 562 A.2d 694, 695 (Me.1989); *York Mut. Ins. Co. v. Superintendent of Ins.*, 485 A.2d 239, 241 (Me.1984). In reviewing the decisions of an administrative agency, we do not attempt to second-guess the agency on matters falling within its realm of expertise and limit our review to determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record. *Cf. Bangor Hydro–Electric Co. v. Public Util. Comm'n*, 589 A.2d 38, 42 (Me.1991). The agency's factual determinations must be sustained unless shown to be clearly erroneous.[6] *Id.* On questions involving the interpretation and application of technical statutes or regulations, this court gives deference to the administrative agency unless the statutes or regulations plainly compel a contrary result. *See LeBlanc v. United Eng. & Constructors*, 584 A.2d 675, 677 (Me.1991); *York Mut. Ins. Co.*, 485 A.2d at 241; *Walters v. Petrolane–Northeast Gas Serv.*, 425 A.2d 968, 972–73 (Me.1981).

■■ The general objective of the classification system is to group employers so that the insurance rates they pay reflect the risk exposures common to the employers in

---

ture pieced from outside sources and assemble same into final products.

The Scopes Manual also provides that Codes 2881 and 2883 "shall not be assigned to the same risk unless the operations described by these classifications are conducted as separate and distinct businesses."

5. The Scopes Manual for Code 2735 provides in pertinent part:
    Code 2735 is applied to insureds which manufacture from sawed lumber various wood parts for furniture such as tabletops, table legs, chair parts, panels for beds and other wood pieces for furniture. These parts are cut to dimension and shipped unfinished and unassembled to the purchaser. The operations generally involve sawing, planing, wood turning, mortising, tenoning, sanding, etc.

We note that the record indicates that Imagineering finishes most of the furniture it mills and sells very few unfinished parts to outside purchasers.

6. We recognize no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies. *Stanford Highway Unit of Local 481 v. Town of Sanford*, 411 A.2d 1010, 1013 (Me.1980).

that group.[7] In accordance with Basic Manual Rule IV(A), each employer is "assigned the one basic classification which best describes the business of the employer within [the] state."[8] The rules specifically state that "it is the business of the employer within a state that is classified, not the separate employments, occupations or operations within the business."

■ According to the Basic Manual, an employer should be assigned more than one classification only if "a classification requires operations or employees to be separately rated" or "an employer operates a secondary business within a state."[9] The Manual does not define "secondary business" but does provide that all of the following conditions must exist before more than one classification can be assigned to a single employer: (a) the secondary business must be conducted as a "separate undertaking or enterprise;" (b) separate payroll records must be maintained for each business; (c) each business must be physically separated by structural partitions and conducted without interchange of labor; and (d) the assignment of separate classification must not be prohibited by the wording of the applicable classifications or any other classifications assigned to the policy.

Taken as a whole, the uniform classification system reflects a strong policy decision that workers' compensation premium rates should reflect the aggregation of all of the risk exposures for various employers assigned to a particular classification and deliberately classifies an employer's business overall, not the individual risk environments existing within that business. To this end, the rules provide that each employer must be assigned only one basic classification whenever possible.

Imagineering takes issue with the logic of the one basic classification principle and contends that the classification system

---

7. Basic Manual Rule IV(A) provides:
   GENERAL EXPLANATION
   The object of the classification system is to group employers into classifications so that the rate for each classification reflects the exposures common to those employers. Subject to certain exceptions described later in this rule, *it is the business of the employer within a state that is classified, not the separate employments, occupations or operations within the business.*
   (Emphasis added.)

8. Basic Manual Rule IV(D)(1) provides:
   **Object of Classification Procedure**
   The object of the classification procedure is to assign the one basic classification which best describes the business of the employer within a state. Subject to certain exceptions described in this rule, each classification includes all the various types of labor found in a business. *It is the business which is classified, not the individual employments, occupations or operations within a business....*
   (Emphasis added.)

9. Basic Manual Rule IV(D)(4) provides:
   **Assignment of Additional Basic Classification**
   If a classification requires operations or employees to be separately rated or if an employer operates a secondary business within a state, an additional basic classification shall be assigned only if all of the following conditions exist:
   a. The secondary business is conducted as a separate undertaking or enterprise. This condition does not apply if the classification wording requires the assignment of an additional classification for specified employees or operations. For example, some classifications direct that certain operations are to be separately rated.
   b. Separate payroll records are maintained for each business.
   c. Each business is physically separated by structural partitions and is conducted without interchange of labor.
   d. The assignment of the separate classifications is not prohibited by wording of that classification or any other classification assigned to the policy.
   If all of the above conditions do not exist:
   (1) All employees shall be assigned to the classification applicable to the principal business if the classification for the principal business carries a rate which is the same or higher than that for the classification of the secondary business.
   (2) The secondary business shall be assigned to the classification which describes that business if such classification carries a rate higher than that applicable to the principal business.
   (3) The principal business is the business with the greatest amount of payroll, excluding standard exception or general exclusion operations.
   e. Policies with more than one classification may involve employees working in connection with the several classifications. Payroll assignment for such employees is subject to Rule IV–E.

should be based upon the risk environment actually faced by employees at a given facility. Although it has some appeal to logic, Imagineering's position is not supported by the plain language of the Basic Manual and is contrary to the policy choice made by the Superintendent of Insurance in approving the current classification system. Because neither the plain language nor the overall structure of the Basic Manual compels, or even suggests, that an employer's classification should be based upon the actual risk environment at a given facility rather than upon the nature of the employer's business as a whole, the Superintendent's enforcement of the one basic classification principle should be upheld.

Moreover, the question whether an employer operates a "secondary business" for the purpose of workers' compensation insurance classification is a question of fact and the Superintendent's finding on this issue will not be overturned on appeal unless shown to be clearly erroneous. *Cf. Central Maine Power v. Public Util. Comm'n*, 455 A.2d 34, 44 (Me.1983). Applying the criteria outlined in Rule IV(D)(4), the Superintendent found that Imagineering maintains separate payrolls with respect to the milling and assembly operations; that it maintains two separate locations for these operations; and that the employees at each location work separate and apart from each other. The Superintendent found, however, that Imagineering's milling and assembly operations are not "separate undertakings or enterprises" within the meaning of Rule IV(D)(4)(a) because they are "simply two steps in the overall undertaking of furniture manufacturing ... and ... the process is best characterized as one enterprise." Accordingly, the Superintendent found that the assembly operation was not a "secondary business" within the meaning of Rule IV(D)(4) and concluded that Code 2883 best describes the entire operation which involves both milling and assembly-finishing. The Superintendent's conclusion is consistent with the one basic classification principle, is supported by substantial evidence in the record and cannot be said to be clearly erroneous.

The entry is:

Judgment of the Superior Court vacated. Remanded with instruction to enter judgment affirming the April 20, 1990 decision and order of the Superintendent of Insurance.

All concurring.