STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-23

BRENDAN GILMARTIN,

Petitioner

v.

DECISION AND ORDER

DAN A. GWADOWSKY,
SECRETARY OF STATE,

Respondent

This matter is before the court on petitioner's M.R. Civ. P. 80C appeal from the determination of the Secretary of State's to suspend petitioner's license for failure to complete a chemical test pursuant to 29-A M.R.S.A. § 2521.

Officer Shane Campbell was called to assist other officers at the Big Apple store on Route 2 in Farmington on October 1, 2000. He was told by the other officers that a group of young adults had been behind the store urinating and dealing drugs. Officer Cote had already arrested one of them. The others ran when the police arrived.

Cote told Campbell that one of the men had pulled up in the red car which was now cordoned by evidence tape. He also stated that the driver had gone into the store just before the police arrived to wash his hands or face, then went behind the store. This information was acquired by Richard Knight, the local postmaster who had been in the store. Campbell looked into the red car and observed pills, marijuana-like plant material, and drug paraphernalia.

Campbell was then dispatched to the Pepper residence which is located approximately 200 yards down the road from the Big Apple. A young man later identified as the petitioner, Gilmartin, had come to the Pepper house seeking help. He

was disheveled and covered in leaves. Campbell observed that Gilmartin's pupils were constricted and he could not remember his last name. He also complained of invisible bump on his head and was generally unresponsive to Campbell but when he did speak his speech was slurred.

Gilmartin admitted that he had not consumed any intoxicants since he drove to the Big Apple. He also informed Campbell that he had been smoking marijuana all weekend at the Harvest Festival (a marijuana event in Starks). From this, Campbell determined that Gilmartin was high on a drug other than alcohol. Gilmartin handed the keys to his car to Campbell who subsequently did a BMV check of the registration which confirmed the car belonged to Gilmartin. Knight identified Gilmartin as the man who he saw get out of the red car. Campbell then took Gilmartin to the hospital. The attending physician told Campbell that Gilmartin had no concussion or any other serious medical condition. Campbell then contacted Drug Recognition Technician (DRT) and state police detective Michael Mitchell. DHS protocol for DRTs requires the elimination of alcohol as a cause of intoxication before testing for other drugs, Mitchell performed an intoxilyzer test on Gilmartin at the Franklin County Sheriff's Office. The result was a BAC of .000%. Mitchell then informed Gilmartin that he was going to evaluate him for drugs other than alcohol and may require Gilmartin to provide a urine sample. Gilmartin refused, explaining that he had taken Percocet and they would find it in his urine. He refused to participate in the DRT's evaluation and would not give a urine sample.

Campbell read the implied consent agreement and allowed Gilmartin to read it for himself, aloud. Gilmartin's license was suspended for failure to complete a chemical test pursuant to 29-A M.R.S.A. § 2521. Pursuant to Gilmartin's request, a hearing was

held in Augusta on February 7, 2001. The hearing examiner issued her decision on March 1, 2001 finding that there was probable cause to believe that petitioner was under the influence of intoxicants; that he was informed of the consequences of failing to submit to a test; and that he in fact failed to submit to a chemical test. Gilmartin now appeals from that decision.

Petitioner first takes the position that there was insufficient evidence offered at the administrative hearing to establish that there was probable cause that he was operating a motor vehicle while under the influence of intoxicants. 29-A M.R.S.A. § 2521(8)(A). This argument rests largely on the fact that nobody witnessed the petitioner driving his vehicle. Petitioner also maintains that even if it had been established that he was driving his vehicle, there was no evidence to suggest that he was under the influence of drugs. Too much time had passed between the time the officers noticed the unparked car and when they first had contact with Gilmartin. The inference being that there was no evidence that he was under the influence at the time of operation. Even if he was operating a vehicle under the influence, there is no evidence that Gilmartin's ability to drive was impaired.

Gilmartin also avers that there was insufficient evidence to prove that he was properly informed of the consequences of refusing to submit to a chemical test as is required by 29-A M.R.S.A. § 2521(8)(B). The testimony offered by two witnesses with regard to the reading of the implied consent form was directly contradictory. The officer read the implied consent form before Gilmartin took the intoxilyzer test then paraphrased the form again before he submitted to additional testing. Petitioner maintains that this constitutes a failure to inform him of the consequences of refusing to submit to a chemical test.

3

Finally, Gilmartin argues that there was insufficient evidence to prove that he actually failed to submit to a chemical test. 29-A M.R.S.A. § 2521(8)(C). This argument is based on the statutory mandate that a person shall submit to and complete "a test." 29-A M.R.S.A. § 2521(1). Petitioner fulfilled his legal obligation by submitting to the intoxilyzer test but was not required to submit to additional tests.

The State provides record evidence upon which the hearing examiner based her decision. An automobile registered to Gilmartin was observed by Richard Knight, the Farmington postmaster, and by his wife driving into the Big Apple parking lot. Knight witnessed petitioner get out of his car and go into the store to wash his hands and face. Gilmartin then walked outside behind the store. Gilmartin still had the keys to his car when Officer Campbell made contact with him and the Pepper residence just down the street.

When Campbell arrived at the Big Apple, one of the other officers had already arrested one of the young men behind the store for drug dealing, indicating that drugs were present. Campbell also observed pills, marijuana and drug paraphernalia in plain sight in Gilman's car. Campbell thought that Gilmartin looked "stoned"; pinpoint pupils, unresponsive, difficulty with balance, and slurred speech. Gilmartin told the officer that he had not consumed any intoxicants since he parked his car. Furthermore, Gilmartin admitted that he had been smoking marijuana all weekend at the Harvest Festival, and admitted to being the individual who went into the store to wash his hands or face, then into the woods behind the store to urinate.

Both Officer Campbell and Trooper Mitchell testified that the implied consent warning was read to Gilmartin by Campbell, and that Gilmartin asked additionally to read it himself, which he did, and he read it aloud. This testimony was undisputed.

4

Finally, the State maintains that there is no dispute that Gilmartin failed to submit to and complete a chemical test. The State does not respond to Gilmartin's statutory argument that he was only required to submit to one test.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, the court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). The court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence which supports the result reached by the agency. *CWCO, Inc v. Superintendent of Ins.*, 1997 ME 226, ¶6, 703 A.2d 1258, 1261. *See also Clarke v. Maine Unemployment Ins. Comm'n*, 491 A.2d 549, 552 (Me. 1985) (stating that the "reviewing court must examine the entire record to determine whether on the basis of all the testimony and exhibits before the agency it could fairly and reasonably find the facts as it did").

Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering*, 593 A.2d at 1053 (noting that the court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau of Banking*, 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

Here, there is more than the modest requirement of any competent evidence upon which the agency could have rationally based its decision. There is copious evidence. Probable cause was clearly established by the officer's arrest of a young man for dealing drugs at the Big Apple, where Gilmartin's car was parked. Also, the officer noticed drugs and drug paraphernalia in petitioner's car. Furthermore, Gilmartin admitted to not having consumed any intoxicant since he parked his car. He came to the Pepper house in a confused state with constricted pupils. Gilmartin also admitted that he had been smoking marijuana all weekend at the Harvest Festival.

To the extent that petitioner's characterization of the officers' testimony as "conflicting" regarding the informed consent form is accurate, such a conflict in testimony can not be resolved by this court acting in its appellate capacity. Determinations of credibility, as always, are left to the fact finder, in this instance the hearing examiner. In any case, the testimony by the officers hardly appears conflicting as to any meaningful fact. Their testimony differed only as to who read the implied consent form, what particular exhibit was used, and whether the implied consent was communicated without a form. This discrepancy was apparently overshadowed by the more relevant determination that the petitioner had been informed, in some fashion, of the consequence of failing to submit to the test.

Finally, petitioner's argument that he is only legally required to submit to one test, and therefore he had satisfied his duty after he completed the intoxilyzer is creative but not persuasive. It is apparently the policy of law enforcement to first give an individual this type of test before a chemical test. In light of this policy and because Officer Campbell believed Gilmartin was under the influence of drugs other than alcohol, the intoxilyzer was only a component part of one test; to wit, the chemical test.

6

Even if Campbell believed Gilmartin to be under the influence of drugs including alcohol, petitioner's interpretation of the statute would require that the officer choose to test the subject for only one or the other (drug or alcohol) but not both. This interpretation of the statute would render an absurd result.

The entry will be:

Appeal of petitioner after M.R. Civ. P. 80C review is DENIED.

Dated: August 16, 2001

Donald H. Marden
Justice, Superior Court

7

Date Filed __4/3/01__ ___Kennebec___ Docket No. __AP01-23__
County

Action ___Petition for Review___
80C

J. MARDEN

Brendan Gilmartin   vs.   Dan A. Gwadosky, Sec. of State

| Plaintiff's Attorney | Defendant's Attorney Joseph Wannemacher, AAG |
|---|---|
| Andrew P.T. Bloom, Esq.<br>75 North Street<br>P.O Box 856<br>Saco, Maine  04072 | Steven Rowe, AG<br>6 State House Station<br>Augusta, Maine  04333 |

| Date of Entry | |
|---|---|
| 4/4/01 | Petition for Review 5 M.R.S.A. 11001 et seq. M.R.Civ.P. 80C, filed. s/Bloom, Esq.  (filed 4/3/01) |
| 4/9/01 | Entry of Appearance, filed. s/Wannemacher, AAG. |
| 4/13/01 | Certified copy of the complete record, filed. s/Wannemacher, AAG |
| 4/13/01 | Notice of briefing schedule mailed to attys of record. |
| 5/21/01 | Motion for Extension of Time to File Appeal, filed. s/Bloom, Esq. |
| 5/22/01 | MOTION FOR EXTENSION OF TIME, Marden, J.<br>Without objection motion GRANTED.<br>Copies mailed to attys of record. |
| 6/11/01 | Petitioner's Brief, filed. s/Bloom, Esq. |
| 7/16/01 | State' Memorandum of Law with attachment, filed.  s/J. Wannamacher, AAG |
| 8/14/01 | Oral arguments had on 8/9/01 with Justice Marden, Presiding;<br>Andrew Bloom, Esq. for the Petitioner and Joseph Wannamacher,<br>AAG for the Respondent.  After arguments, matter taken under<br>advisment.  Tapes 572 & 573 Index 6345-7197 and 2-350. |
| 8/17/01 | DECISION AND ORDER, Marden, J.  (dated 8/16/01)<br>Appeal of petitioner after M.R.Civ.P. 80C review is DENIED.<br>Copies mailed to attys of record.<br>Copies mailed to Deborah FIrestone, Garbrecht Library and Goss.<br><br>Notice of removal of record mailed to attys. |