STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-21
DHM - KEN - 2/5/2004

STEPHANIE GIROUARD,

      Petitioner

v.

MAINE STATE RETIREMENT SYSTEM,

      Respondent

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

MAR 19 2004

This matter is before the court on petition for judicial review of final agency action pursuant to 5 M.R.S.A. § 11007 and M.R. Civ. P. 80C. This review questions a decision by the Maine State Retirement System that petitioner Stephanie Girouard's illness and exhaustion, whether primarily psychological or physical, is treatable with therapy and/or not disabling. Ms. Girouard and her cardiologist maintain that she continues to suffer debilitating and disabling effects from acute pericarditis.

Stephanie Girouard was, at the time of her hearing before the Maine State Retirement System, on May 6, 2002, thirty years old and had taught elementary school for seven years in Maine. According to her testimony, in April of 2000, four months after delivering her second child, she came down with flu like symptoms that persisted and eventually led to her hospitalization. She was found to have a pericardial effusion[1] and was diagnosed with and treated for acute pericarditis.[2] This treatment included

---

[1] "Pericardial effusion defines the presence of an abnormal amount and/or character of fluid in the pericardial space."Emedicine, William J Strimel, DO, *Pericardial Effusion*, http://www.emedicine.com/med/topic1786.htm
Pericardium – the membranous sac enclosing the heart. WEBSTER'S II, NEW RIVERSIDE UNIVERSITY DICTIONARY 873 (The Riverside Publishing Company 1988).
[2] A description of the effects, possible causes and treatments of acute pericarditis from The Merck Manual – Second Home Edition is attached to this memorandum.

medication, draining fluid from around her heart on at least three different occasions and in August of 2000, heart surgery.[3]

Six weeks after surgery Ms. Girouard returned to work teaching 5th grade at the Greene Elementary School part time. Throughout the fall Ms. Girouard continued to experience shortness of breath, fatigue, chest pressure, numbness in her extremities and puffiness under her eyes. These physical symptoms were coincident with progressive "tearfulness," difficulty sleeping, anxiety and fear of fatal illness. Although she testified that she aimed to return to teaching full time, she felt too sick and fatigued to continue her work and stopped teaching in January of 2001. On June 16, 2001 petitioner Girouard applied for disability benefits through the Maine State Retirement System.

On December 27, 2001 the Maine State Retirement System's ("MSRS") Executive Director's designee issued a Decision stating:

> Based on consultation with the system's Medical Board and after review of the medical records and information, your diagnoses have been clarified for our purposes to be: acute pericarditis with pericardial effusion, depressive disorder, NOS[4] and panic disorder, and your application has been denied.

The Decision stated that as to acute pericarditis, it had not been demonstrated that the condition made performance of Ms. Girouard's duties impossible and as to depressive disorder, NOS and panic disorder, the information reviewed does not indicate that these conditions are permanent.

The December 27, 2001 Decision laid out two distinct avenues of appeal for petitioner. "Option 1" offered petitioner an opportunity to ask for reconsideration by the Executive Director of the MSRS "for the sole purpose of allowing you to submit

---

[3] The operation, a pericariectomy (a removal of the pericardium), which required a thoracotomy created what is called a "pericardial window." This "window" was used to "strip" the pericardium.

[4] "Depressive disorder NOS" is a label from the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM") published by the American Psychiatric Association. "NOS" is an acronym for "Not Otherwise Specified."

additional evidence <u>only</u> on the issue of whether your incapacities due to depressive disorder, NOS and panic disorder are expected to be permanent." (Emphasis in original) "Option 2" allowed an appeal of ineligibility for disability "on the bases of acute pericarditis with pericardial effusion and/or depressive disorder, NOS and panic disorder to the Board of Trustees pursuant to MSRS Rules Chapter 702 and 5 M.R.S.A. § 17451." In a letter dated January 18, 2002, petitioner, through counsel, advised the MSRS that she elected to appeal under "Option 2" based on her ongoing pericarditis.

After a hearing and consideration of petitioner's written comments in response to the Hearing Officer's Recommended Decision, a Decision of the Board of Trustees ("The Board") was issued on April 10, 2003. The Board found that petitioner had experienced a life threatening illness, pericarditis, which created a risk of cardiac tamponade (a potentially fatal compression of the heart). They also found that surgery had been successful and Ms. Girouard has had no further effusion. The Board noted petitioner's return to work along with her ongoing fatigue, exhaustion and sharp chest pains. Further, the Board noted Ms. Girouard's treatment for depression and anxiety with Paxil and other medications.

The Board noted that petitioner testified that her endurance and fatigue levels have remained unchanged since surgery, but that she also testified that she has increased her activity to include once a week yoga, some walking and occasional exercise directed by a work out video. The Board took note of the fact that Dr. Welch, petitioner's cardiologist, "testified that he now believes her ongoing chest pain is caused by chronic inflammation of the pericardium, or pericarditis." The Board also noted that the Medical Board flatly disagreed with Dr. Welch, stating, "there is no evidence of chronic inflammation." Notes from petitioner's primary care physician during the summer of 2001, Dr. Pamela Ross, to the effect that Ms. Girouard's fatigue "her

predominant symptom" was "largely caused by depression and anxiety disorder" were cited along with the fact that petitioner changed physicians in October 2001.

Dr. Richard E. Fortier, a board certified forensic psychiatrist, conducted an independent medical examination ("IME") and issued a report. This was performed as part of the MSRS evaluation of petitioner's disability claim. It is summarized by the Board as stating "there is little or no evidence of ongoing physical disease" and "Appellant's worries and fears are consistent with depressive disorder which is responsible for her fatigue and which has limited her ability "and willingness" to resume teaching." The Board cites Dr. Fortier's conclusion that "although the depressive fatigue 'may' limit her endurance and ability to sustain a full day of work at first, with "efficacious psychiatric treatment, the outlook for full recovery would be excellent over the next four to six months.""

The Board found that petitioner did not meet the statutory standard of proving that it is "impossible" to perform her duties of employment.

> Taking all of the evidence into consideration, Appellant has failed to prove by a preponderance of the evidence that her symptoms make it impossible for her to return to work as a 5th grade teacher.

> This conclusion is unaffected by the dispute over the cause of Appellant's symptoms. Whether caused by pericarditis, post-viral syndrome, depression, or some combination thereof, the symptoms do not prevent a return to work.

The Board also noted that petitioner had increased her physical activity post surgery and now practices some yoga, exercises lightly and sold Mary Kay products part time.

Petitioner filed a timely petition with this court on April 24, 2003.

When the decision of an administrative agency is reviewed pursuant to M.R. Civ. P. 80C, this Court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services,*

664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Exam'r of Psychologists*, 2000 ME 206 ¶ 9, 762 A.2d 551, 555 (Me. 2000) (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261 (Me. 1997)). In reviewing the decisions of an administrative agency, the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise." The Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on review is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc. v. Superintendent of Ins.*, 703 A.2d 1258, 1261. "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 762 A.2d 551 (citations omitted). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Id.*

Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering*, 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau*, 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result."

*Maine Bankers Ass'n,* 684 A.2d at 1306 (citing *Centamore v. Department of Human Services,* 664 A.2d 369, 370 (Me. 1995)).

The Maine State Retirement System operates under the following standard for finding disability:

A.    The incapacity is expected to be permanent;

B.    That it is impossible to perform the duties of the member's employment position.

5 M.R.S.A. § 17921 (in relevant part).

Petitioner maintains that she meets that standard and that her testimony and the testimony of Dr. Welch, her Cardiologist, are credible. Petitioner maintains that MSRS has offered no evidence disputing that she suffers from recurrent chest pain, discomfort, difficulty breathing and chronic fatigue. Further, she notes that the MSRS did not cross-examine Dr. Welch and never suggested that another cardiologist examine her. The MSRS, according to petitioner, chose to dismiss Dr. Welch's testimony "without a valid or documented reason." The MSRS, according to petitioner, relied "on the opinions of the Medical Board, whose members have never even met Ms. Girouard." Petitioner calls the MSRS reliance on the Medical Board's opinion "not only perplexing, but also clearly erroneous."

Petitioner avers that the MSRS "inferences, conclusions and decisions in this matter were affected by bias or error of law; unsupported by substantial evidence on the whole record; and/or arbitrary or capricious or characterized by abuse of discretion." (Petitioner notes that pursuant to 5 M.R.S.A. § 11007(C)[5] this court has the

---

[5] Reverse or modify the decision if the administrative findings, inferences, conclusions or decisions are:
    1)     In violation of constitutional or statutory provisions;
    2)     In excess of the statutory authority of the agency;
    3)     Made upon unlawful procedure;

authority to reverse or modify the MSRS decision and asks this court to remand this matter to the MSRS for the award of petitioner's disability benefits or in the alternative remand to the MSRS for further consideration of petitioner's claim, including review of her condition by an independent licensed cardiologist.

Respondent maintains that while there is no dispute that petitioner "currently suffers certain functional limitations" there is no dispute about the "predominant" cause of these limitations, their permanency and the impossibility of returning to work as a fifth grade teacher. Respondent makes clear that it believes Ms. Girouard's symptoms, which she describes as fatigue, shortness of breath, chest pain, discomfort, difficulty concentrating, anxiety and numbness in extremities are predominantly psychiatric in origin. Further, respondent avers that even with her "functional limitations" petitioner can return to work teaching fifth grade. These limitations, argues respondent, have a "psychiatric etiology"[6] and are treatable.[7] Although petitioner and her cardiologist dispute the curative effect of the August 22, 2000 heart surgery (pericariectomy) performed by Dr. Paul Weldner at Maine Medical Center, respondent states, "the procedure performed by Dr. Weldner was successful."

---

4)    Affected by bias or error of law;
5)    Unsupported by substantial evidence on the whole record; or
6)    Arbitrary or capricious or characterized by abuse of discretion. XLR.CJS C.J.S. Public Administrative Law And Procedure §§ 230, 249.
5 M.R.S.A. § 11007(C).

[6] "The cause of a disorder or disease as determined by medical diagnosis." WEBSTER'S II, NEW RIVERSIDE UNIVERSITY DICTIONARY, 445 (Houghton Mifflin 1988).

[7] This conclusion differs subtly, but importantly, from that reached by the MSRS Board of Trustee's Decision of April 10, 2003. In that Decision, the Board stated that the conclusion that Ms. Girouard did not meet the disability standard in 5 M.R.S.A. § 17921 "is unaffected by the dispute over the cause of Appellant's symptoms. Whether caused by pericarditis, post-viral syndrome, depression, or some combination thereof, the symptoms do not prevent a return to work." (R. 28.7).

Mr. Pamela Ross, a primary care physician who saw Ms. Girouard nine times between October 3, 2000, and May 8, 2001, and Linda Horn, APRN,[8] emphasize Ms. Girouard's anxiety, fearfulness or depression. Her further symptoms are cited as having been precipitated by petitioner's medical condition. However, the Board stated that petitioner "failed to prove by a preponderance of the evidence that her symptoms make it impossible for her to return to work as a fifth grade teacher." The Board further stated that this conclusion is unaffected by the source of Ms. Girouard's symptons.

Petitioner complains that the MSRS has offered no evidence disputing the testimony of her Dr. Welsh and, did not even cross-examine Dr. Welsh or look for an independent cardiologist examination. However, as respondent argues, the petitioner has the burden of proving that the Board's decision is "clearly erroneous."

Of course, in the end, it may not matter what the source of Ms. Girouard's symptoms are. According the MSRS Decision of April 10, 2003 appellant "failed to prove by a preponderance of the evidence that her symptoms make it impossible for her to return to work as a 5th grade teacher." As noted above, the Board further stated that this conclusion is unaffected by the source of Ms. Girouard's symptoms.

Respondent states that petitioner has the burden of proving that the Board's decision is "clearly erroneous" citing, *Douglas v. Board of Trustees of the Maine State Retirement System*, 669 A.2d 177, 179 (Me. 1995). In *Douglas* the Law Court said that "[w]hen an agency concludes that the party with the burden of proof failed to meet that burden, we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference." *Douglas*, 669 A.2d at 179.

Respondent cites another 1995 law Court decision for the premise that "[a]ny decision based on relevant evidence as a reasonable mind might accept as adequate to

---

[8] APRN is an acronym for "Advanced Practice Registered Nurse." *See* 32 M.R.S.A. § 2102)2-A) and (5-A).

support a conclusion, even when it is possible to draw inconsistent conclusions from the evidence, must be upheld as supported by substantial evidence." (Res. Brief at p. 10), Citing, *Bischoff v. Board of Trustees of the Maine State Retirement System,* 661 Al. 2d 167, 170 (Me. 1995).

Another Law Court decision describing the very heavy burden placed on a petitioner seeking to overturn a MSRS Board ruling is cited for the proposition that an appellate court will reverse the agency only if the record compels a contrary result to the exclusion of any other inference. *Hale-Rice v. Maine State Retirement System,* 1997 ME 64, ¶17, 691 A.2d 1232, 123, citing, *Douglas v. Board of Trustees,* 669 A.2d 177, 179 (Me. 1996) ("When an agency concludes that the party with the burden of proof failed to meet that burden, we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference.")

Respondent further asserts that "[t]he Board was free to reject entirely petitioner's factual claims, insofar as those claims varied from another, more acceptable version of the facts." *Citing, See, Sprague Electric v. Maine Unemployment Insurance Commission,* 544 .2d 728, 732-33 (Me. 1988). What the *Sprague* court said was that "[t]he Commission's finding will be upheld if there is competent evidence to support it, notwithstanding inconsistent evidence in the record," *Id.* at 732, and that "[t]his credibility determination was exclusively the province of the Commission and will not be disturbed on appeal." *Id.*

Petitioner complains that the MSRS relied on opinions of the Medical Board, whose members have never even met Ms. Girouard. Petitioner calls the MSRS reliance on the Medical Board's opinion not only perplexing, but also erroneous. Certainly, a decision by a Medical Board solely based upon the opinions of its members and without regard to the evidence or without opportunity for cross-examination would be suspect

as against the testimony of a treating physician. However, the court notes the Medical Board had before it the following testimony and exhibits.

- Testimony of Stephanie Girouard

- Testimony of George Welsh, M.D.

- Exhibit 1 (appeal packet)

- Exhibit 2 (Maine Cardiology Reports 1/7/01, 9/5/01, 8/6/01, 7/12/01)

- Exhibit 3 (Maine Cardiology Report 1/25/02)

- Exhibit 4 (Dr. Welsh report 3/7/02)

- Medical reports submitted with letter dated May 20, 2002 (Drs. Horn, Dick, Burtis, and Michelle Roy, PA-C)

- Decision on reconsideration dated 7/5/02 with attached four-page Medical Board report dated 6/27/02

The Medical Board agreed with Dr. Fortier and stated that the resulting anxiety impaired concentration and short-term memory, and difficulty coping with stress amounted to "substantial functional limitations" but would respond to treatment and likely not be permanent. This conclusion was cited in the recommended decision of the Board of Trustees. The Board concluded that the appellant suffered from a rare and life-threatening condition that required open-heart surgery in the year 2000. The decision recognized petitioner's complaint that she is still afflicted with chronic pericarditis causing her fatigue, shortness of breath and chest pain and that Dr. Walsh continues to believe that the pericarditis is the sole cause of her current symptoms. The Board concludes:

> The statutory standards for receiving MSRS disability benefits require proof that it is 'impossible' to perform the duties of employment. Although Appellant's testimony regarding her symptoms was entirely credible, she has also gradually improved since her surgery. She no longer feels tearful, has begun exercise and yoga, and has been able to

start selling Mary Kay. Taking all of the evidence into consideration, Appellant has failed to prove by a preponderance of the evidence that her symptoms make it impossible for her to return to work as a fifth grade teacher.

This conclusion is unaffected by the dispute over the cause of Appellant's symptoms. Whether caused by pericarditis, post-viral syndrome, depression or some combination thereof, the symptoms do not prevent a return to work.

It is true that Dr. Welsh testified that Appellant is totally disabled from teaching. The overall weight of the evidence, however, did not support this. Appellant's primary care physician felt that she 'needs to get back on her feet' and the Medical Board gave her a full time, light duty work capacity. These two reports were consistent with Appellant's gradually increasing activity and reduced anxiety and depression.

Such conclusions and the evidence upon which they are based is consistent with the evidence before it in light of petitioner's burden of proof. Such evidence was substantial evidence and the record does not compel a contrary result to the exclusion of any other inference. The evidence is competent and substantial notwithstanding inconsistent evidence in the record. The credibility evidence was exclusively for the respondent.

The entry will be:

The opinion of the Board of Trustees of the Maine State Retirement System of April 10, 2003, regarding the petitioner is AFFIRMED.

Dated: February___5___, 2004

Donald H. Marden
Justice, Superior Court

Date Filed __4/24/03__ __Kennebec__ Docket No. __AP03-21__
County

Action __Petition for Judicial Review__
80C

# J. MARDEN

__Stephanie Girouard__ VS. __Maine State Retirement System__

Plaintiff's Attorney | Defendant's Attorney

Verne E. Paradie, Jr. Esq.
10 Minot Avenue
P.O. Box 470
Auburn, Maine  04212-0470

James M. Bowie, AAG
6 State House Station
Augusta, Maine  04333-0006

| Date of Entry | |
|---|---|
| 4/24/03 | Petition for Judicial Review of Final Agency Action, filed. s/Paradie, Esq. |
| 4/30/03 | Letter entering appearance, filed. s/Bowie, AAG |
| 5/9/03 | Certificate of Administrative Record, filed. s/Gail Drake Wright, Exe. Dir. **(RECORD IN VAULT)** |
| 5/14/03 | Notice of briefing schedule mailed to attys of record. |
| 6/17/03 | Petitioner's Brief, filed, s/Paradie, Jr., Esq. |
| 7/15/03 | Respondent's Memorandum of Law in Opposition to the Petition for Review, filed. s/Bowie, AAG |
| | Notice of setting for __11/25/03__ |
| | sent to attorneys of record. |
| 11/25/03 | Hearing had, Hon. Donald Marden, Presiding.  (No courtroom clerk and no recording made) Court takes matter **under advisement.** |
| 2/6/04 | DECISION AND ORDER, Marden, J. (dated 2/5/04) The opinion of the Board of Trustees of the Maine State Retirement System of April 10, 2003, regarding the petitioner is AFFIRMED. Copies mailed to attys of record. Copies mailed to Deborah Firestone, Garbrect Library and Goss. |
| | Notice of removal of record mailed to attys |