STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-05-59

ꝹHM-KEN- 7|13|06

TOWN OF WARREN
AMBULANCE SERVICE,

Petitioner

v.

**DECISION AND ORDER**

MAINE DEPARTMENT OF
PUBLIC SAFETY, MAINE
EMERGENCY SERVICES,

Respondent

This matter is before the court on Town of Warren Ambulance Service's ("petitioner" or "Town") petition for judicial review of final agency action, pursuant to M.R. Civ. P. 80C.

The population of the Town of Warren is approximately 4,000. Warren is the site of the state prison farm (Bolduc), and of a maximum-security prison, which opened in 1995, then housing approximately 100 inmates. In 2002, when the prison in Thomaston closed its doors, the facility in Warren absorbed that prison population.[1] In the years immediately preceding the addition of the Thomaston prison population, the Town of Warren Ambulance Service made between three and six transports annually to and from the prisons. Since 2002, ambulance transports involving the prison have climbed to between 39-49 per year, a substantial increase. In 2004, state law was changed, capping reimbursement for ambulance services used at correctional facilities to match reimbursement rates paid by the MaineCare program. 34-A M.R.S.A. § 3031-B (2005).

---

[1] According to the Maine Department of Corrections website, the Bolduc Correctional Facility can hold 150 inmates, and the Maine State Prison in Warren has a capacity for 916 inmates. *See* http://www.maine.gov/corrections/index.html (last visited July 11, 2006).

This change in rate reduced reimbursement to the Town for ambulance trips from $330 to $90 per trip.

The Town of Warren operates an ambulance service, staffed by volunteers, and is required to serve the inmates, staff, and visitors of the Maine State Prison facilities located in Warren, Maine. Under Maine Emergency Medical Services ("EMS") Rules, Chapter 3 § 2(4)(A), the petitioner is expected to respond to calls for an ambulance from its "primary response area" which is defined as "any area to which the service is routinely made available when called by the public to respond to medical emergencies." Though the Maine State Prison is located in the Town's "primary response area," the petitioner had requested that the Department of Public Safety ("Department" or "respondent") deem the prison not to be "the public" as far as the EMS Rules were concerned. In the alternative, petitioner requested that application of Chapter 3, § 2(4) be waived regarding the Town of Warren Ambulance Service. In sum, petitioners do not want to continue providing ambulance services to the state prison in Warren, as it is too expensive, and some EMS personnel fear serving the prison.

In its Decision and Order of September 7, 2005, the Department denied petitioner's requests. This appeal followed, in which the record and all briefs have been timely filed.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this Court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services,* 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Exam'r of Psychologists,* 2000 ME 206 ¶ 9, 762 A.2d 551, 555 (Me. 2000) (citing *CWCO, Inc. v. Superintendent of Ins.,* 1997 ME 226, ¶ 6, 703

A.2d 1258, 1261 (Me. 1997)). In reviewing the decisions of an administrative agency, the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc.*, 1997 ME 226, 703 A.2d 1258, 1261. "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 762 A.2d 551 (citations omitted). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Id.* "[Petitioner] must prove that no competent evidence supports the Board's decision and that the record compels a contrary conclusion." *Bischoff v. Board of Trustees*, 661 A.2d 167, 170 (Me. 1995).

Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering*, 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau*, 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n*, 684 A.2d at 1306 (citing *Centamore v. Department of Human Services*, 664 A.2d 369, 370 (Me. 1995)).

Petitioner first seeks to exclude the Warren prison population from the "public" that the Town is required to serve with ambulances. In an effort to do so, petitioner cites a Maine Superior Court case and a Michigan Supreme Court case, neither of which are controlling here. *See generally Traxler v. State of Maine, Dep't of Corrections*, Kenn. Docket No. CV-00-113 (Jan. 10, 2001) (Studstrup, J.); *Brown v. Genesee County Bd. of Comm'rs*, 628 N.W.2d 471 (Mi. 2001). In the Maine case, the court ruled that as far as inmates were concerned, correctional facilities were not "places of public accommodation under 5 M.R.S.A. § 4553(8)(M) [Maine Human Rights Act]." *See Traxler* at *1. Petitioner wishes to extrapolate from that decision that prisons are not the equivalent of "the public" and thus the Town's ambulance service is not required to serve the prison population as part of its mandate to serve the public.

The Michigan case addressed whether an inmate is a member of the public for purposes of pursuing a tort claim against the prison, under the "public building" exception to that state's governmental immunity statute. In *Brown*, an inmate slipped and injured himself in the shower, and tried to pursue damages against the county jail. The court concluded that the inmate would not be a member of the public in that context. *See Brown*, 628 N.W.2d at 472. Inmates are "legally compelled" to be in the prison and are thus not part of the "public" contemplated by the "public building" exception to governmental immunity under tort claims law. *See id.* at 476. Petitioner concludes its discussion of these cases by emphasizing that the Warren inmates do not vote or otherwise participate in civic life, and therefore should not be considered members of the public.

If the Department persists in considering inmates members of "the public," Petitioner's next tack is to assert that the Department's denial of a waiver is not supported by substantial evidence. In order to grant a waiver, the Department must

determine "that such a waiver would avert a significant injustice while preserving the public safety and the integrity of the statutory and regulatory components of the State's EMS system." *See* EMS Rules, Chapter 13, § 1. The Department considers five factors (though not limited by these) in determining whether to grant a waiver:

1.      Whether the person seeking the waiver took reasonable steps to ascertain the rule and comply with it;

2.      Whether the person seeking the waiver was given inaccurate information by an agent or employee of the State EMS program;

3.      Whether the person seeking the waiver, or any other individual or group, would be significantly injured or harmed if the rule were not waived;

4.      Whether waiver of the rule in the particular case would pose a health or safety risk to the public at large or a particular or individual or community; and

5.      Whether waiver of the rule in the particular case would establish a precedent that would unduly hinder the Board or office of EMS in its administration of Maine's EMS system.

EMS Rules, Chapter 13, § 2(1-5).

On the final three factors, the Department found that the prison community would be harmed by the granting of the waiver, that a safety risk would attach to granting of the waiver, and that granting the waiver would create a damaging precedent.

Petitioner's first argument is that adequate emergency medical facilities exist, absent the Town's ambulance service, to care for the prison community in Warren. On site, there is a 24 hour, seven day a week infirmary, with ten beds, staffed by nurses full time, and a physician's assistant and doctor. The infirmary staff is able to administer IVs, and "is more equipped than any EMT in providing medical services." Petitioner

also refers to Sterling Ambulance, presumably a private company, which provides non-emergency transport to other medical facilities. Petitioner thus contends that no harm would come to the prison population were the waiver to be granted, and the Department ignored the substantial evidence on the record supporting that view.

Next, petitioner argues that substantial evidence on the record demonstrated that the greater Warren community would be harmed by the Town's ambulance service being forced to continue to serve the prison. The Town's ambulance service is comprised of volunteers, all of whom have full time jobs in addition to serving on the ambulance crews. First, petitioner points out that some of the female volunteers are wary of serving the all-male prison population, the implication being that some might drop out of the volunteer service were they mandated to continue responding to calls from the prison. The Town's ambulance service also felt overwhelmed by the sudden increase in demand from the prison beginning in 2002, and felt that there was little in the way of support during that transition. Coupled with the change in reimbursement rates, the Town suffered a $30,000 shortfall in its budget for the ambulance service (expenditures were $78,000, revenues $47,000). Petitioner concludes that the "real 'public'" in Warren will suffer as a result of the waiver being denied, while the prisoners will be unaffected.

Finally, petitioner downplays the precedential effect granting a waiver would have by emphasizing the unique conditions attendant to the Warren situation. By surveying other locations in Maine and in other states, petitioner seeks to demonstrate that "in all other cases involving the need for medical response services to a concentrated population, towns have invariably created full time emergency services and/or have made arrangements to defray operational and other expenses for medical providers." While the prison, as it expanded in 2002, was also supposed to coordinate

emergency medical needs with the Town, it failed to do so, burdening the small, volunteer ambulance service.

Respondent first seeks to correct the standard under which the petitioner brings its appeal, arguing that petitioner should be challenging the agency's interpretation of its own regulations, and not asserting that the Department based its decision on a lack of substantial evidence. Respondent points to petitioner's lawyer's own letter to the Department at the outset of this controversy, indicating that he was seeking an "interpretation" of an agency rule. As administrative law principles dictate deference to an agency's interpretations of its own rules, respondent wishes to reframe the governing standard for this case. *See Becker v. Bureau of Parks & Lands*, 2005 ME 120, ¶ 2, 886 A.2d 1280, 1281 (Me. 2005) (citation omitted).

While respondent acknowledges that responding to ambulance calls from the prison has become a burden on the Town, the Department appropriately interpreted the EMS Rule to require that the Town serve the prison, located in its "primary response area." Respondent also remarks that the ambulance calls to the prison do not only stem from inmate emergencies, but from staff and visitors to the facility as well, all of whom are members of the public that the Department stated had to be served by the Town ambulance services. Respondent continues to dismiss petitioner's reliance on *Traxler* and *Brown* as inapposite, as those cases focus on prisoners only, and not the greater "public" that may also be an integral part of the prison community.

With regard to the waiver, the Department has the discretion to grant it, and argues that it did not abuse that discretion by not granting the waiver in this case. They say they appropriately considered the five factors listed *supra*, and in weighing them, did acknowledge that the Town would be harmed financially by the waiver not being granted. However, the Department concluded that prejudice toward serving the

prison population might lead to the Town to "'select' patients beyond the provisions for primary and secondary response areas found in the Rules." Ultimately, the Department concluded that granting the waiver would be more harmful to Warren's public than helpful to the Town. The Department did not find that the Town's financial difficulties was an "extraordinary circumstance" warranting the granting of the waiver.

Respondent also takes issue with petitioner's sweeping claim that in "all other cases" municipalities find ways to support their local ambulance providers. Respondent questions the applicability of the comparison towns petitioner introduces, highlighting the fact that the Town of Windham, also home to a correctional facility, has "no special conditions" attached to the ambulance service to the prison there.

Petitioner believes the Department erred by misinterpreting evidence on the record regarding the public nature of the prison in Warren. Petitioner reiterates its claims that prisoners are not free to leave the facility nor participate in civic life, and that the Department ignored these facts when examining the evidence. In terms of any new information or argument, petitioner points out that since 2002, there have only been three ambulance calls to the prison involving staff; the vast majority of calls concern inmates. Thus, the Department's including visitors and staff as part of the public that are implicated in the discussion seems overly broad.

With regard to the negative impact of granting the waiver, petitioner forcefully states that doing so would not create an unmanageable precedent, as this situation is truly unique: Warren Ambulance Service is a one-vehicle, volunteer operation. The enormous influx of new prisoners to Warren in 2002 had a corresponding effect on the use of the ambulance service. The Town argues that effect is felt both fiscally by the Town (and its taxpayers), but also is likely to affect the Town's ability to efficiently respond to medical emergencies outside of the prison.

The court finds that the Department correctly interpreted its own rules in determining that the prison population was part of the public to be served by the Town of Warren Ambulance Services. While the Department carefully weighed the factors relating to whether it should have granted a waiver to the Town, thereby exempting the Town from providing ambulance service to the prison, it is very clear that the Town is being negatively impacted financially. The record reveals that the Department took that into consideration when making its decision and, indeed, weighed that fact in the Town's favor. There is also some evidence on the record indicating that provisions for the large influx of prisoners were not made as carefully as they should have been. While it is the court's role to review the Department's decision based on APA criteria, this court concludes that the petitioner has demonstrated that the Department either abused its discretion or made a decision that was not supported by substantial evidence on the record.

The record is unequivocal that the petitioner is significantly injured or harmed if the rule is not waived and there is no evidence to support the contrary conclusion. Since it appears undisputed that the Warren Ambulance Service is a one-vehicle volunteer operation and is an organization charged with the responsibility of supporting a public of approximately 4,000 persons, increasing the public population by almost 25% unquestionably poses a health or safety risk to the non-prison population of the Town. Furthermore, in light of the evidence of the prison population present in a community of the size of Warren it is unquestionable that such a unique set of circumstances clearly distinguishes this case from establishing any precedent which would act to the detriment of the Board or the office of EMS in its administration of Maine's EMS system. Because the evidence is overwhelmingly contrary to the Board's decision on the question of waiver, this court finds it to be an abuse of discretion.

The entry will be:

The Decision and Order of the State of Maine Department of Public Safety, Maine Board of Emergency Medical Services in re: Town of Warren Ambulance Service Appeal of Staff Interpretation of Maine EMS Rules (dated July 1, 2003) Chapter 3, § 2(4)(A) and/or Request for Waiver dated September 7, 2005, is AFFIRMED regarding its interpretation of Maine EMS Rules; it is REVERSED regarding petitioner's request for waiver; the matter is REMANDED to the Board of Maine Emergency Medical Services for issuance of waiver of rules to the Town of Warren Ambulance Service.

Dated: July _13_, 2006

Donald H. Marden
Justice, Superior Court

Date Filed __10/3/05__ __Kennebec__ Docket No. __AP05-59__
County

Action __Petition for Review__
80C

J. MARDEN

__Town of Warren Ambulance Service__ vs. __Maine Department of Public Safety, Main__

Plaintiff's Attorney | Defendant's Attorney Emergency Medical Services

Roger J. Katz, Esq.
227 Water Street
P.O. Box 1051
Augusta Maine 04332-1051

Laura Yustak Smith, AAG
6 State House Station
Augusta, Maine 04333-0006

| Date of Entry | |
|---|---|
| 10/3/05 | Petition for Review of Final Agency Action, filed. s/Katz, Esq. Summons with return service made upon Maine Department of Public Safety, fil Summons with return service made upon Maine Emergency Medical Services, filed |
| 10-14-05 | Received and filed from Plt. Atty. Roger Katz, Esq. his Affidavit indicating that service was made on the Respondent on 10-03-05. Return Certified Postage Receipt attached and filed as of this date. |
| 10/17/05 | Letter entering appearance, filed. s/Smith, AAG |
| 10-26-05 | Received and filed by AAG Laura Smith for Respondent Motion to Enlarge Time to File Agency Record and a draft order. |
| 10/28/05 | ORDER ON RESPONDENT'S MOTION TO ENLARGE TIME TO FILE AGENCY RECORD, Studstrup, J. On motion of Respondent, and there being no objection by Petitioner, Respondent's Motion to Enlarge Time to File Agency Record is GRANTED. Respondent shall file the record by November 22, 2005 Copies mailed to attys. of record |
| 11-21-05 | Received and filed by AAG Laura Yustak Smith a certified copy of the record maintained by the Maine Dept. of Public Safety, Bureau of Emergency Medical Services, Tab A, Tab B, and Tab C. |
| 11/22/05 | Notice of briefing schedule mailed to attys of record. |
| 01-04-06 | Received and filed by Petitioner's Attorney, Roger Katz, the Petitioner's Motion to Enlarge. AAG Laura Yustak-Smith position on this Motion is unknown at this time. Proposed Order filed along Motion |
| 1/5/06 | Petitioner's Brief on Appeal, filed. s/Katz, Esq. |
| 1/6/06 | ORDER ON PETITIONER'S MOTION TO ENLARGE, Marden, J. Copies mailed to attys of record. |
| 2/6/06 | Brief of Respondent, filed. s/Smith, AAG |
| 2/21/06 | Petitioner's Reply Brief, filed. s/Katz, Esq. Certificate of service, filed. s/Katz, Esq. |