Lannon **BISCHOFF,**

v.

**BOARD OF TRUSTEES,** Maine State Retirement System.

Supreme Judicial Court of Maine.

Argued June 7, 1995.

Decided July 14, 1995.

David A. Chase (orally), William E. Mac-Donald, MacDonald & Chase, Bangor, for plaintiff.

Andrew Ketterer, Atty. Gen., Cabanne Howard (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J. and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

The Board of Trustees of the Maine State Retirement System (the Board) appeals from the entry of a judgment in the Superior Court (Penobscot County, *Gunther, J.*) reversing the Board's decision to discontinue Lannon Bischoff's disability retirement benefits. The Superior Court construed the applicable statute [1] to continue disability retirement benefits on a showing of any disability. The Board contends that the disability must be the condition for which the beneficiary's application was originally approved. We agree with the Board's interpretation of the statute and conclude, after reviewing directly the record developed before the agency, that the Board was not compelled to find that Bischoff's depression was causally connected to her lung cancer.

A review of Bischoff's eligibility for continued benefits determined that Bischoff had recovered from her lung cancer, the condition for which her application for benefits had been granted, and that her other "subjective complaints" presented no obstacle to her returning to work. The Board's executive director determined that Bischoff's benefits should be discontinued, a decision from which Bischoff appealed. She does not dispute that she no longer suffers from cancer, but claims that she now suffers from disabling depression. The hearing officer determined that the depression was not linked to the cancer and recommended that the Board sustain the executive director's decision. The Board adopted the hearing officer's recommended decision. The Superior Court, on Bischoff's appeal, vacated the decision of the Board and ordered Bischoff's benefits reinstated.

1. 5 M.R.S.A. § 17907(2)(B) (1989 and Supp. 1994).

## I. The statute

Title 5 M.R.S.A. § 17907(2)(B) (1989 and Supp.1994) provides in part:

**2. Cessation.** Payment of disability retirement benefits shall continue so long as a person is disabled, except that:

> **B.** After *the disability* has continued for 5 years, the disability of the beneficiary must render him unable to engage in any substantially gainful activity for which the beneficiary is qualified by training, education, or experience.

(Emphasis added). The Board construed "the disability" to refer exclusively to the condition for which the recipient's application for disability retirement benefits was originally approved. The Superior Court looked to 5 M.R.S.A. § 17901, which defines "disabled" as "mentally or physically incapacitated," and concluded, "The word 'disability' as the Court interprets it, means a state of being incapacitated, as opposed to referencing a particular cause for the condition." Bischoff urges us to accept the trial court's broader interpretation.

The absence of any indication by the Legislature that it intended the disability retirement system to serve as a substitute for social security disability benefits or in a manner analogous to a disability insurance policy, and the deference we normally accord an agency's interpretation of the statutes it implements, require us to accept the Board's interpretation. The Board's reading is consistent with the plain language of the statute and with rules promulgated to explain that statute. Chapter 507 of the rules adopted by the Board to clarify and enforce the statute provides in pertinent part:

> A person shall be determined to be unable to engage in any substantially gainful activity if the person lacks the physical or mental capacity, *due to the incapacity for which the person was awarded disability retirement benefits,* to perform or participate in any activity or activities, tasks or efforts that are or could be performed in such a manner as to generate remuneration in an amount which is consistent with average final compensation.

Me.S.Retirement System Rules Ch. 507 (Sept. 28, 1993) (emphasis added). We defer to the construction given a statute by those whose duty it is to implement and enforce it. *Georgia–Pacific Corp. v. Tax Assessor,* 562 A.2d 672, 674 (Me.1989). An agency's interpretation, although not conclusive on the court, "is entitled to great deference and will be upheld unless the statute plainly compels a contrary result." *Abbott v. Commissioner of Inland Fisheries & Wildlife,* 623 A.2d 1273, 1275 (Me.1993). Nothing in the statute relevant in the instant case renders the Board's interpretation contrary to the legislation's expressed purpose.

Alternatively, Bischoff suggests in essence that the Board should have considered her depression as a disability incurred while "in service." This argument is unavailing. Section 17755 reads, "A beneficiary shall receive service credit for the purpose of determining benefits under this Part for the period following termination of service for which the beneficiary receives disability retirement benefits under subchapter V, articles 3 and 3–A." 5 M.R.S.A. § 17755 (Supp.1994) (footnote omitted). The language of the statute itself refutes Bischoff's assertion. The statute speaks of the "termination of service" in reference to receipt of retirement disability benefits. Service is defined as "service as an employee for which compensation was paid." 5 M.R.S.A. § 17001(37) (1989). "[A] member qualifies for a disability retirement benefit if the member becomes disabled *while in service.*" 5 M.R.S.A. § 17904 (Supp.1994) (emphasis added). The period during which a person receives disability benefits is "creditable service," that is, "service for which credit is allowable under section[ ] 17755." 5 M.R.S.A. § 17001(10) (1989). The statute distinguishes between creditable service and active service. Even if Bischoff received service credit for the period following the termination of her service as an employee for which she was paid compensation, she was not in service during that period. This further supports the Board's position that it should not consider an independent, intervening disability when undergoing a continuation-of-benefits review. Were it to do so, the Board would be considering a disability incurred while not in service.

## II. The evidence

▇▇▇ When the Superior Court acts as an intermediate appellate court, we review directly the evidence developed before the agency. *See Gulick v. Board of Environmental Protection,* 452 A.2d 1202, 1208 (Me. 1982). We will not overturn conclusions supported by competent and substantial evidence. *Id.* Inconsistent evidence will not render an agency decision unsupported. *Id.* The burden of proof rests with Bischoff as the one seeking to overturn the agency's decision. *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n,* 450 A.2d 475, 479 (Me.1982). Bischoff must prove that no competent evidence supports the Board's decision and that the record compels a contrary conclusion. *Nyer v. Maine Unemployment Ins. Comm'n,* 601 A.2d 626, 627 (Me.1992).

▇▇▇ The Board had evidence before it that could lead it reasonably to conclude that Bischoff's lung cancer and depression were unconnected. Dr. Paul Szal, a radiation oncologist, wrote a series of reports describing her symptoms and progress. A psychologist who worked with Bischoff noted that he saw her for "four visits during which we worked on some emotional injuries the patient had both from her family of origin and her marital situation." The letter continued, "Ms. Bischoff was able to benefit from our work together and at the time of her discharge seemed significantly less depressed...." Psychiatrist James Healey's report of October 1993 concluded that Bischoff "is considered to be totally and permanently disabled by the depression and psychiatric disorder and she is unlikely to recover for more than a year." Healey's report of Bischoff's own statements noted, "Most of the serious depression started after her mother died, but she wasn't depressed before that. Her mother died approximately 18 months ago." Responding to an inquiry from Bischoff's counsel, Healey responded, "I do indeed think that her depression is connected and caused by her cancer, I'm sorry if I didn't make that clear in my report." Responding to a similar inquiry from the Board's executive director, Dr. James Fegan opined just the opposite: "The additional data pertains to depression which does not seem to be linked to her rather remarkable survival of a grim cancer diagnosis. She no longer has the disability for which she originally applied."

The Board had before it evidence that suggested Bischoff's depression was linked to problems stemming from her "family of origin," her marriage, and/or her mother's death. The Board could have discounted Healey's second statement as perfunctory and not credible and determined instead that the evidence overall indicated other sources of the depression. We cannot say that the record before us compelled the Board to reach a contrary conclusion.

The entry is:

Judgment vacated. Remanded with instructions to enter a judgment affirming the decision of the Board of Trustees of the Maine State Retirement System.

All concurring.