STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-05-44

DHI :٤'/ ']\:3|0٤

BLANCHE C.,

      Petitioner

      v.

STATE OF MAINE,
DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

      Respondent

**DECISION AND ORDER**

This matter is before the court on petition for review of final agency action by petitioner Blanche C. ("petitioner") pursuant to M.R. Civ. P. 80C.

Blanche C. is a 50-year-old woman who was a patient at the Acadia Hospital ("Acadia"), a psychiatric facility, for approximately two weeks in November 2002. She had been admitted for severe depression, stemming from her impending divorce. She was also quite angry and agitated, such that the hospital felt the need to place her under emergency orders, which involved administering anti-psychotic medication and using physical restraints. While restrained, petitioner injured her wrist. Within a month of being released from the hospital, petitioner filed a grievance pursuant to the Rights of Recipients of Mental Health Services ("RRMHS"). The grievance procedures involve three levels, and petitioner first filed a Level I complaint, alleging that she was involuntarily medicated, involuntarily restrained, and her subsequent wrist injury was attended to inadequately. The Level I grievance was heard by the supervisor of her unit, who denied it, as did the CEO of Acadia, at Level II of the grievance process. The Level III grievance was then heard by the Division of Administrative Hearing at

DHHS[1], which did find that some of petitioner's rights were violated, and recommended, among other things, that DHHS issue an apology to the petitioner. In his final decision on the grievance, the DHHS Commissioner accepted the finding that the petitioner was not examined within 30 minutes of being place in restraints, per regulations, but denied the remainder of the hearing officer's recommendations, including the issuing of an apology to petitioner. The Commissioner ordered Acadia to "acknowledge in writing that its policy...misstates the timing of post-restraint examination required by the Rights of Recipients," and to amend the policy so it conforms to those rights. This petition followed.[2]

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this Court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Exam'r of Psychologists*, 2000 ME 206 ¶ 9, 762 A.2d 551, 555 (Me. 2000) (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261 (Me. 1997)). In reviewing the decisions of an administrative agency, the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the Court would have reached the same conclusion as the agency,

---

[1] Legislation regarding the grievance process and jurisdiction over it changed in April 2004; petitioner was permitted to proceed under the new regulations, even though actions giving rise to her grievance occurred under older laws that would not have permitted her grievance to be heard by DHHS.

[2] Petitioner filed a motion to strike Acadia's participation, to which Acadia responded with a motion to intervene. Petitioner ultimately withdrew her objection to Acadia's involvement in the matter.

but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc.,* 1997 ME 226, 703 A.2d 1258, 1261. "Inconsistent evidence will not render an agency decision unsupported." *Seider,* 762 A.2d 551 (citations omitted). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Id.* "[Petitioner] must prove that no competent evidence supports the Board's decision and that the record compels a contrary conclusion." *Bischoff v. Board of Trustees,* 661 A.2d 167, 170 (Me. 1995).

Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering,* 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau,* 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n,* 684 A.2d at 1306 (citing *Centamore v. Department of Human Services,* 664 A.2d 369, 370 (Me. 1995)).

Petitioner's complaint centers on the first few days that she was a patient at Acadia, October 30, 2002-November 3, 2002. According to regulations, in an emergency, patients may be given medication involuntarily for up to 72 hours. Any continued emergency medication can only be administered via written authorization of the clinical director of the facility. While petitioner did not have medication administered to her beyond the initial 72-hour emergency period, orders were entered

to extend that emergency timeframe, without securing the appropriate authorization. Petitioner was thus under the threat of being involuntarily sedated and restrained. Blanche C. provided moving testimony about what being restrained was like, with her doctor testifying at hearing that given the emergency orders (inappropriately) covering petitioner for almost five days, petitioner could have been so restrained. Petitioner argues that the regulations were "crystal clear" regarding the need for written authorization to extend emergency orders, and that those regulations were not obeyed. While the Commissioner agreed with petitioner, the Commissioner concluded that no harm came to petitioner because no additional medications were involuntarily administered to petitioner beyond the initial 72-hour authorization period. Petitioner argues that the harm was the "continuous fear" and "potential state of terror" she and other patients might be in just knowing that lax interpretation of procedures could mean involuntary restraint. Petitioner argues that the Commissioner's interpretation of the rule, that it in fact was violated, but caused no harm to petitioner, was an abuse of discretion and an error of law.

Petitioner next focuses on the injury to her wrist she sustained as a result of the physical restraints, and her contention that she did not receive adequate medical care for the injury while at Acadia. A nurse practitioner examined the wrist on November 9, and recommended that a hand specialist be consulted if her symptoms persisted. Three days later the specialist was consulted over the phone, at which point the referral to actually see the specialist was cancelled. Petitioner's attending physician, Dr. Gardner, was a psychiatrist and purported to have little knowledge of petitioner's medical condition insofar as it was unrelated to her mental health. Dr. Gardner testified that she was unclear on hospital policy in terms of who was responsible for patients' non-psychiatric medical care, and that she was certainly not an orthopedist, and would have

been unqualified to diagnose petitioner's wrist condition. Petitioner maintains that the hospital had to meet an adequate standard of medical care, and that the burden was on DHHS to demonstrate that the appropriate standard of care had been met. *Forbes v. Osteopathic Hosp. of Maine*, 552 A.2d 16, 17 (Me. 1988). To so demonstrate, the hospital needed expert testimony, and the testimony of Dr. Gardner, an acknowledged non-expert when it came to orthopedics, was not sufficient for the hospital or DHHS to carry its burden of proof. Thus, the petitioner avers the Commissioner's decision was unsupported by substantial evidence on the record below.

Finally, petitioner takes umbrage with the Commissioner's decision that an apology to her for the way she was treated upon admission to Acadia would have "no value...nearly three years" after petitioner was admitted to the hospital. Petitioner references the United States Congress' decision to issue an apology to U.S. citizens of Japanese ancestry for their imprisonment during World War II, over 50 years after the internment took place. What was good enough for the Congress should be good enough for the Commissioner: it is not the amount of time that has passed since the harmful event that matters to the petitioner, but rather the acknowledgment that she was not treated as she should have been. Such an apology could have a healing effect, and she argues it was an abuse of discretion and error of law for the Commissioner to ignore the recommendation of the hearing officer to issue the apology.

DHHS first focuses on the fact that courts uphold agency interpretations of their own regulations, unless the regulations compel a contrary result. *See Isis Dev., LLC v. Town of Wells*, 2003 ME 149, ¶ 3, n.4, 836 A.2d 1285. With that standard in mind, DHHS argues that it was reasonable for the Commissioner to decide as he did that petitioner's rights regarding her emergency treatment were not violated. Had petitioner been administered treatment against her will over a period of more than 72 hours, without

appropriate written authorization, her rights would have been violated; though there was the potential for that to have occurred, it did not, so the Commissioner's interpretation of the regulation in this case does not compel a contrary result.

DHHS next addresses the care petitioner received regarding her wrist injury, arguing that adequate health care was provided to her, per RRMHS regulations. *See* Ch. 1, Part B § II(E)(2). Petitioner did not complain of numbness in her wrist until several days after she had been physically restrained, on November 1. Upon complaint, the wrist was iced over a period of several days, X-rayed to rule out a fracture, and hospital staff consulted with a hand specialist over the phone (who could not schedule an office visit for several months). Upon discharge, petitioner had an appointment with her primary care physician scheduled for six days later. At her hearing, petitioner testified that she never sought follow-up care for the wrist pain once she was discharged from Acadia. DHHS contends that the evidence describing monitoring and caring for the wrist injury is sufficient to support the Commissioner's conclusions regarding petitioner being provided with adequate medical care. Further, DHHS also seeks to correct the standard by contending that unlike a negligence action, this dispute about interpreting the Rights of Recipients does not require expert medical testimony regarding the proper standard of medical care.

Finally, with regard to the apology, DHHS counters that the Commissioner did order a fitting remedy for the one violation of petitioner's rights it did find, namely that she was improperly monitored while restrained. The Commissioner ordered a review and change of the relevant policy. Further, DHHS points out that at the lower levels of the grievance process, petitioner did receive letters from Acadia indicating regret about the way she was treated, and an offer to apologize and work with her to change

hospital policies. Petitioner's decision to pursue court action effectively rejected those offers of apology.

Acadia adopts the DHHS arguments made above, and adds one significant additional point, focusing initially on the Commissioner's decision to hear the Level III grievance in the first place. Acadia points out that the Commissioner himself acknowledged that "out of fairness to the grievant...although not technically required to do so given the date on which her grievance arose, the Department exercises the discretion to hear and resolve this grievance."[3] Acadia argues that the Commissioner had no such discretion to hear the grievance and thus his final decision on the matter should be stricken from the record.

The law allowing Level III grievances from patients at non-state mental hospitals to be heard by the Commissioner of DHHS did not become effective until April 22, 2004. *See* 22 M.R.S.A. § 1719(3). Nothing in that law indicated that it could or should be applied retroactively. Further, "administrative bodies... are statutory in nature and can only have such powers as those expressly conferred on them by the Legislature, or such as rise therefrom by necessary implication to allow carrying out of the powers accorded to them." *See Hopkinson v. Town of China*, 615 A.2d 1166, 1167 (Me. 1992). The Commissioner was acting absent legislative authority when he decided to hear the petitioner's grievance and thus inappropriately exercised discretion that was not his. Acadia casts this argument as one implicating subject matter jurisdiction, which cannot be waived, and which can also be raised at any time. *See* M.R.Civ.P. 12(h)(3); *Landmark Realty v. Leasure*, 2004 ME 85, ¶ 6, 853 A.2d 749, 750.

---

[3] The Commissioner reasoned that though the grievance arose back in 2002, it had taken some time to wend its way through the process, thus overlapping a change in law that would now permit the Commissioner to hear the grievance had it arose after 2004. Due to some confusion about filing deadlines, the Commissioner erred on the side of accommodating the petitioner.

The court is satisfied that the Commissioner's conclusion in his interpretation of the rule that the lack of actual harm, as opposed to potential harm, was not an abuse of discretion and not an error of law and the conclusion should be affirmed. Furthermore, the court is satisfied that the Commissioner's decision was supported by substantial evidence on the record regarding the petitioner's wrist injury. The court's conclusion, however, with compliments to the Commissioner for giving the petitioner the benefit of the doubt as to the applicability of the amended grievance levels, is that the Commissioner did not have jurisdiction to consider the matter. Failing that, this court has no jurisdiction to review the Commissioner's decision.

The entry will be:

> For lack of jurisdiction over a decision of the Commissioner of the Department of Health and Human Services, the petition is DISMISSED.

Dated: July____13____, 2006

Donald H. Marden
Justice, Superior Court

Date Filed __8/5/05__ __Kennebec__ Docket No. __AP05-44__
County

Action __Petition for Review__
80C

# J. MARDEN

__Blanche C.__ vs. __Department of Human Services__

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Mark C. Joyce, Esq.<br>24 Stone Street<br>P.O. Box 2007<br>Augusta Maine 04338-2007 | George C. Schelling, Esq. (Acadia)<br>Sandra L. Rothera, Esq.<br>23 Water Street<br>P.O. Box 917<br>Bangor, Maine 04402-0917<br><br>Katherine Greason, AAG<br>State House Sta 6<br>Augusta Maine 04333 |

| Date of Entry | |
|---|---|
| 8/5/05 | Petition for Review, filed. s/Joyce, Esq. |
| 8/25/05 | Entry of Appearance for Acadia Hospital and Position Statement of Acadia Hospital, filed. s/Rothera, Esq. s/Schelling, Esq. |
| 8/29/05 | Entry of Appearance and Position of Statement, filed. s/Greason, AAG |
| 9/2/05 ** ------ | Certified Record, filed. s/Greason, AAG.<br>(in vault)<br>Notice of briefing schedule mailed to attys of record. |
| 10/12/05 | Brief of Petitioner, filed. s/Joyce, Esq. |
| 11/3/05 | Respondent's Brief, filed. s/Greason, AAG. |
| 11/10/05 | Respondent Acadia Hospital's Brief, filed. s/Rothera, Esq. |
| 11-17-05 | Received and filed as of this date by Petitioner's Attorney Mark Joyce, A Reply Brief, and Petitioner's Motion to Strike Brief and Dismiss Acadia Hospital and Memorandum of Law, and Proposed Order. |
| 12/2/05 | Respondent Acadia Hospital's Opposition to Petitioner's Motion to Strike and Dismiss Acadia Hospital and in the Alternative Moves to Intervene and be Heard in this Matter, filed. s/Rothera, Esq.<br>Proposed Order on Respondent Acadia Hospital's Opposition to Petitioner's Motion to Stike and Dismiss, filed.<br>Proposed Order on Respondent Acadia Hospital's Motion to Intervene, filed.<br><br>Letter informing the court that Atty. Joyce objects to Motion to Intervene, filed. s/Rothera, Esq. |
| 12/23/05 | Petitioner's Opposition to Acadia Hospital's Motion to Intervene and Incorporated Memorandum of Law, filed. s/Joyce, Esq. |
| 12-29-05 | Received and filed by Sandra Rothera, Esq., Attorney for Respondent Acadia Hospital's Reply to Petitioner's Opposition to Motion to Intervene. |