STATE OF MAINE                                    SUPERIOR COURT
Sagadahoc, ss.                                              /

TOWN OF GEORGETOWN,

        Petitioner

        v.                                        Docket No. SAGSC-AP-09-10

STATE OF MAINE
BOARD OF ENVIRONMENTAL
PROTECTION,

        Respondent

## DECISION AND ORDER

The Town of Georgetown ("Town") has filed this appeal under M. R. Civ. P. 80C

and the Maine Administrative Procedure Act, 5 M.R.S. §§ 11001 *et seq.*, from a decision of

the Maine Board of Environmental Protection ("Board"), affirming the decision of the

Department of Environmental Protection ("DEP") to deny approval to the Town's current

Shoreland Zoning Ordinance unless the Town deletes a portion of the Ordinance.

The Town's appeal seeks to have the Board's decision vacated, and to have the

matter remanded with an order requiring the Board to grant full approval to the Ordinance.

The Board asks that the court affirm its decision and deny the appeal. Counsel for the

parties presented oral argument July 7, 2010. For the reasons stated below, the court affirms

the Board's decision and denies the appeal.

### *Background and Procedural History*

The Mandatory Shoreland Zoning Act ("Act") requires the Board to adopt

"minimum guidelines for municipal zoning and land use controls." 38 M.R.S.A. § 438-A(1)

(2009). In compliance with this requirement, the Board has adopted Guidelines for

Municipal Shoreland Zoning Ordinances ("Guidelines"). *See* 06 096 Code of Maine Rules ch. 1000, at http://www.maine.gov/sos/cec/rules/06/chaps06.htm. The Act also requires municipalities to "prepare and submit to the commissioner zoning and land use ordinances that are consistent with or are no less stringent than the minimum guidelines adopted by the board." 38 M.R.S.A. § 438-A(2). "Municipal ordinances, amendments and any repeals of ordinances are not effective unless approved by the commissioner." 38 M.R.S.A. § 438-A(3).

In 2006, as authorized by statute, the Board amended the Guidelines. *See* 38 M.R.S.A. § 438-A(1). The revisions resulted in the Town and other municipalities being required both to amend their ordinances defining Resource Protection Districts ("RPD") in order to meet the Guidelines' requirements, and also to submit revised shoreland zoning ordinances to the Department for approval. *Id.* § 438-A(2) and (3).

Development in RPDs is limited so as to protect state-designated resources. The Guidelines define Resource Protection Districts as encompassing:

> [A]reas in which development would adversely affect water quality, productive habitat, biological ecosystems, or scenic and natural values. This district shall include the following areas when they occur within the limits of the shoreland zone, exclusive of the Stream Protection District, except that areas which are *currently developed* and areas which meet the criteria for the Limited Commercial, General Development I, or Commercial Fisheries/Maritime Activities Districts need not be included within the Resource Protection District.

Guidelines section 13(A) (emphasis added).

The Guidelines also require that areas within 250 feet of wetlands and other specified areas be included within a Resource Protection District, subject to the same exception for "currently developed" areas and other areas.

The 2006 revisions to the Guidelines also added a definition of "development":

> [A] change in land use involving alteration of the land, water, or vegetation, or the addition or alteration of structures or other construction not naturally occurring.

Guidelines section 17.

In light of the Board's 2006 revision of the Guidelines, the Town revised the corresponding definition of Resource Protection District in its Shoreland Zoning Ordinance:

[A]reas in which development would adversely affect water quality, productive habitat, biological ecosystems, or scenic and natural values. This district shall include the following areas when they occur within the limits of the shoreland zone, except that areas that are *currently developed as defined in this Ordinance* and areas that meet the criteria for the Limited Residential, or Commercial and Maritime Activities Districts need not be included within the Resource Protection District.

(Record Tab 1, Shoreland Zoning Ordinance for the Town of Georgetown § 13.) (emphasis added).

The Town also included in its revisions the 2006 Guidelines definition of "development". Record Tab 1, 2009 Ordinance, § 17, p. 23. However, the Town did not change its definition of "Developed area," which dates to 1993 and reads as follows:

[A]s of 18 November 1993 which: include the actual specific developed area such as an established principal structure and associated accessory structures (including driveways, gardens and mowed areas but not including any undeveloped areas that may be on the lot); areas already approved for subdivision, or development; or for which there is a valid State-approved wastewater disposal design.

(Record Tab 1, 2009 Ordinance, § 17, p. 23; Record Tab 15, Ex. A, "Shoreland Zoning Ordinance (2002)".)

In 2007, the Town was party to a Superior Court proceeding in which the court ultimately decided that a lot that the Town had placed in a RPD should be excluded from Resource Protection status because the lot had received approval for a septic system before the 1993 amendments, and therefore qualified as a "developed area" under the Ordinance exception. *See Moger v. Town of Georgetown,* Super. Ct., Sag. Cty. Docket No. AP-06-08, Decision and Order (Aug. 7, 2007). Based on the *Moger* decision, the Town reviewed its classification of lots within the RPD and determined that 14 other lots within the defined

RPDs should also be excluded from Resource Protection status because they also had been approved for subdivision, development or septic design permits as of November 1993.[1]

In March 2009, the Town submitted its revised Shoreland Zoning Ordinance to the DEP for review and approval. Record Tab 1. After reviewing the submitted ordinance for compliance with the Guidelines, the DEP notified the Town of deficiencies in the Ordinance by letter on April 7, 2009. On April 28, 2009, the DEP issued a Conditional Approval and Partial Denial of the 2009 Ordinance, stating it was denying full approval of the ordinance and would withhold approval until and unless the Town met two requirements, designated as Condition #1 and Condition #2.

Condition #1 required that the Town delete the definition of "developed area." Condition #2 required that the Town return the 14 lots to their previous Resource Protection classification. Record Tab 14, DEP Conditional Approval. Both conditions resulted from DEP's position that the Town's ordinance was contrary to the Guidelines in excluding lots that would otherwise be within a RPD from Resource Protection status solely because they had been approved for permits as of November 1993.

The Town appealed the DEP decision to the Board , and the Board heard the appeal November 5, 2009. On November 11, 2009, the Board issued a final decision, affirming the DEP's decision to deny approval until Condition #1 was met, but vacating the requirement of Condition #2. The Board's decision to affirm Condition #1 was based on the Board's "find[ing] that the definition of 'developed areas' [in the Town Shoreland Zoning Ordinance] is inconsistent with Section 13(A) of the Guidelines . . ." Record Tab 16 at 4.

---

[1]    The events in *Moger* predated all of the administrative proceedings underlying this appeal. Therefore, the Superior Court's analysis in *Moger* assumed the validity of the Shoreland Zoning Ordinance provision at issue in this appeal, and no issue about its consistency with the Guidelines was raised by the parties or decided by the court. For those reasons, the *Moger* decision is relevant only to explain the Town's reclassification of the 14 lots and has no bearing on the issues raised on this appeal. It therefore is not discussed further.

On December 15, 2009, the Town petitioned this court to review the Board's decision pursuant to Rule 80C and 5 M.R.S.A. § 11001. *et seq.* The parties have fully briefed the issues, and the appeal became ready for decision after oral argument July 7, 2010.

## *Discussion*

1.      Standard of Review.

Rule 80C of the Maine Rules of Civil Procedure allows for judicial review of a "final agency action or the failure or refusal of an agency to act." Such review is to be in accordance with the Maine Administrative Procedure Act ("APA"). M.R. Civ. P. 80C(a). "Final agency action" is defined in the APA as "a decision by an agency which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and factual, and for which no further recourse, appeal or review is provided within the agency." 5 M.R.S.A. § 8002(4) (2009).

Pursuant to 5 M.R.S.A. § 11007(4), the court may reverse or modify an agency's decision if the administrative findings, inferences, conclusions or decisions are: "1) [i]n violation of constitutional or statutory provisions; 2) [i]n excess of the statutory authority of the agency; 3) [m]ade upon unlawful procedure; 4) [a]ffected by bias or error of law; 5) [u]nsupported by substantial evidence on the whole record; or 6) [a]rbitrary or capricious or characterized by abuse of discretion."

The burden of proof rests with the Town as the party seeking to vacate the agency's decision. *Bischoff v. Board of Trustees*, 661 A.2d 167, 170 (Me. 1995) (citing *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me. 1982)).

The court cannot "substitute its judgment for that of the agency on questions of fact." 5 M.R.S.A. § 11007(3) (2009). The focus on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record contains competent

5

and substantial evidence that supports the result reached by the agency. *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261. The court should "not attempt to second guess the agency on matters falling within its realm of expertise," and judicial review is limited to the question of "whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991).

II. The Issues and Non-Issues on Appeal

The parties agree that the court has jurisdiction over the Town's timely appeal from final agency action of the Board.

The Town's appeal focuses largely on a reference in the Board order to the Department's "long-standing policy for determining whether affected areas of shoreline are currently developed." Record Tab 16 at 3. The Town asserts that the cited policy is arbitrary and capricious, and that the Board's decision is accordingly an abuse of discretion because it was based on the policy. The Town also argues that the Board's decision is unsupported by substantial evidence on the record because the policy was never provided to the Town, and further that the policy is the equivalent of an illegal rule under the APA as it was not promulgated through proper rulemaking procedures. The Town argues that it is the Guidelines that should prevail over the "policy," and that its Ordinance is indeed consistent with the Guidelines. Lastly, the Town argues that the Board's decision will cause the Town to violate the Taking Clauses of the United States and Maine Constitutions.

The Board responds by noting that the Guideline requirement that a land area be "currently developed" to be exempt from Resource Protection status plainly contemplates that some "development" exist on the land area. The Board contends that, because the Town's ordinance purports to exempt property based on its approved status alone, without

requiring anything in the nature of existing development, the Town's ordinance is inconsistent with the Guidelines. The Board also argues that its decision is supported by the staff policy, although the decision rests on the Guidelines. Lastly, the Board responds to the Town's taking argument by citing Law Court cases to the effect that lots can be precluded from development without there being any unconstitutional taking.

The Town's taking argument is premature. Whether regulation effectuates a taking depends on whether the property owner retains "beneficial and valuable uses" for the property despite the regulation. *See Hall v. Board of Environmental Protection*, 528 A.2d 453, 455-56 (Me. 1987); *accord, Wyer v. Board of Environmental Protection*, 2000 ME 45, ¶ 1, 747 A.2d 192, 193 (landowner's burden to show denial of variance "rendered the property substantially useless and stripped it of all practical value").

The effect of the Board decision to vacate Condition #2 is to eliminate the status of the 14 lots vis-à-vis the RPD as an issue in this appeal. Moreover, were the court to address the taking issue now, the Town would lose—the record presently before the court simply does not contain enough information for the court to conclude that any one or more of the 14 lots, if designated as within a RPD, would be "substantially useless" to the owners within the meaning of *Wyer* and *Hall*. Finally, as the Board itself recognized, the property owners need to be parties to the proceeding—they are not parties to this appeal and they are clearly indispensable parties to any taking determination. For all of these reasons, the court declines to address the taking argument on the ground that it is not cognizable on this appeal. The court considers the parties' and the lot owners' positions on the taking issue to be preserved for determination, if at all, in a different proceeding.

Likewise, the Town's argument regarding the DEP policy is largely beside the point. Although the Board order does refer to the policy, the order clearly indicates that the Board

affirmed the Department as to Condition #1 based on the Town's Ordinance being inconsistent with the Guidelines, not the staff policy. The e-mail and letter communications in the record suggest that the DEP staff did apply a "policy" in denying full approval of the Town ordinance and in determining that the Town wrongly exempted the 14 lots from Resource Protection status. The Town correctly suggests that the Board cannot base its decision to deny approval of a municipal shoreland zoning ordinance on a staff policy, because it is the Guidelines that such ordinances must follow.

But the Board vacated Condition #2 and its decision to affirm the Department decision on Condition #1 recites that it is based on the Guidelines. For all of those reasons, the court does not find it necessary to address the Town's arguments regarding the policy, or indeed to address the validity of the policy itself.[2] It is enough to note that the governing statute requires the Board to assess a municipal shoreland zoning ordinance in light of the Guidelines rather than any staff policy, and the Board decision in this instance explicitly does so.

III. The Town's Ordinance Compared to the Guidelines

---

[2] The material in the Record does raise a question as to whether the "long standing policy" purporting to interpret the Guidelines is in fact more restrictive than the Guidelines in defining development. The Guidelines broadly define development as "[a] change in land use involving alteration of the land, water, or vegetation, *or* the addition or alteration of structures or other construction not naturally occurring" (emphasis added). The Guidelines thus provide that an area can be deemed developed by virtue of a change in land use without any structures or construction, as long as there has been some physical alteration of the land, water or vegetation. For example, a change in land use from woodland to farm would presumably constitute "development" under the Guidelines, whether or not structures or other forms of construction were added.

In implicit recognition of the concern, the Board in its brief does indicate that, if the court upholds the Board's decision on Condition #1, it is the DEP's intention to return to the issue of the status of the 14 lots by initiating rulemaking proceedings, with notice to individual lot owners. *See* Opposition to Petition for 80(C) Appeal at 5 n.4, 19 n.8. In any event, issues relating to the validity of the policy will not be decided in this appeal because the final agency action on which the appeal is based relies on the Guidelines, not on the policy.

The issue on this appeal devolves to whether the Board validly determined to uphold DEP's determination that the Town's Shoreland Zoning Ordinance is not "consistent with [and] no less stringent than the minimum guidelines adopted by the board," to paraphrase the governing statute, 38 M.R.S.A. § 438-A(2).

The starting point must be to examine the Guidelines. The Town does not challenge the validity of the Guidelines themselves, as opposed to the "long standing policy." The Town does, however, note that the Guidelines lack any definition for the term "currently developed." This is true, as far as it goes.

The Guidelines and the Town's Ordinance use the same term—"currently developed"—in defining areas that may be excluded from RPDs. *Compare* Guidelines § 13(A) *with* Ordinance § 13. Although neither the Guidelines nor the Ordinance define the term explicitly, both supply a reasonable means of defining it, through the Guideline definition of "development" and the Ordinance definition of "development" and "developed area."

The Board amended the Guidelines in 2006, as authorized by 38 M.R.S.A. § 438-A(1), to alter the definition of RPD and to add the definition of "development." The Guidelines define "development" as a "change in land use involving alteration of land, water or vegetation, or the addition of alteration of structures or other construction not naturally occurring."

Although the term "currently developed" is not explicitly defined, the Guidelines as a whole render its meaning sufficiently clear. *See e.g. Town of Ogunquit v. Dep't of Public* Safety, 2001 ME 47, ¶ 7, 767 A.2d 291, 293 (noting that when interpreting statutes, courts "consider the statutory scheme as a whole to achieve a 'harmonious result, and avoid a statutory construction that creates absurd, illogical, or inconsistent results") (internal citation omitted);

9

The court will uphold an agency decision "if, on the basis of the entire record before it, the agency could have fairly and reasonably come to the conclusion that it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551, 555 (citations omitted). The party challenging an agency decision has the burden to prove "that no competent evidence supports the [agency] decision." *Id.* "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186.

Not only is the Board's conclusion reasonable, supported by substantial evidence and neither arbitrary nor capricious, the record leaves little room for any other conclusion.

<u>Conclusion</u>

For the reasons stated, the court hereby affirms the Board's decision to affirm Condition #1 of Department Order #13-09 deleting the term "Developed Area" from Section 17 of the Town of Georgetown Shoreland Zoning Ordinance, and denies the Town of Georgetown's appeal.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this order by reference in the docket.

Dated 14 July 2010

A. M. Horton
Justice, Superior Court

11