STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-12-17
Mak - AND - 4/17/2013

SCOTT P. NASON,
Petitioner

v.

ORDER ON
80C PETITION

MAINE UNEMPLOYMENT
INSURANCE COMMISSION
Respondent

Before the Court is claimant Scott Nason's 80C appeal of a decision of the Maine Unemployment Insurance Commission that denied his request for unemployment benefits. A hearing took place on April 4, 2013.

**Background**

Claimant Scott Nason worked as a customer service representative for ACS Commercial Services from September 28, 2011 until he was terminated on April 17, 2012. (R. 138.) ACS is a call center that provides, among other things, emergency roadside assistance services for a large insurance company. *Id.*

ACS has a policy whereby employees receive points for unplanned absences, and accruing 7 points within a 6-month period is grounds for termination. (R. 37-38, 143.) Employees receive one point for missing a full shift, a half point for missing half a shift, and a quarter point for being late. (R. 38.)

Points are assessed even when an employee is absent due to illness, *id.*, but there is a policy that points may be removed if an employee "justifies" his absence with medical documentation such as a doctor's note, (R. 38-40). The record indicates that any doctor's note would be kept in the employee's file and considered later if the employee was about to be fired. (R. 47-48, 71-72.) The record contains inconsistent statements from ACS personnel about whether or not there is any written policy on the removal of points. (R. 39, 109.) The Commission requested that ACS submit the written policy and it failed to do so. (R. 5.) ACS contends that Claimant knew about the policy, (R. 144), but Claimant

1

contends that there was no clear policy on doctor's notes and getting points back, (R. 111-112).

Claimant was absent from work on October 26, 2011, October 31, November 10, November 11, November 21, December 15, December 16, December 22, January 5, 2012, February 7, February 8, March 5, March 6, and April 15. (R. 141-142.) Claimant left work early on January 4, January 10, January 13, and April 9. *Id.* Claimant's absences were all due to illness or medical appointments. (R. 33, 46, 71, 145.) He described his symptoms as fever, vomiting, weakness/fatigue, diarrhea, anxiety, and a hockey-related knee injury. (R. 73-74, 150-158.) Claimant always notified ACS before the start of the shift if he was going to be absent, (R. 142-143), and filled out early release forms when he needed to leave early, (R. 127-129, 155).

The parties disagree about whether Claimant provided doctor's notes for any of his absences. Claimant contends that he did provide doctor's notes for at least some of his early absences, but these did not result in being credited with a point so he stopped doing so. (R. 84, 87.) He testified that some days when he was ill he would go to the doctor and some days he would not. (R. 84.) ACS manager Joseph Swenson and supervisor Sherry Copeland testified that Claimant never provided doctor's notes related to an absence. (R. 46, 71.) Ms. Copeland testified that ACS does not affirmatively ask for doctor's notes unless an employee misses three consecutive days. (R. 72.)

On February 22, 2012, Claimant received a written warning indicating that he had accrued 6.25 points. (R. 125.) On March 7, he received a final written warning indicating that he had accrued 7.25 points. (R. 124.) On March 15, Mr. Swenson offered Claimant a layoff with unemployment benefits due to a reduction in work force within ACS. (R. 30, 43, 98.) Claimant convinced Mr. Swenson not to lay him off and promised to "man up" and not have any more absences. *Id.* On April 17, after an additional early release and absence, ACS terminated Claimant's employment. (R. 126, 138.)

The Claimant applied for unemployment benefits. A deputy decision determined that he had not been terminated for "misconduct," 26 M.R.S.A. §§ 1043(23) & 1193(2), and therefore qualified for benefits, (R. 171). ACS appealed to the Division of Administrative hearings, and a telephonic hearing took place

2

on July 12, 2012. (R. 130.) Mr. Swenson and Claimant were present and testified. (R. 130-131.) The same day, the Hearing Officer affirmed the deputy decision on the same grounds. (R. 119-122.) The employer ACS subsequently appealed to the Maine Unemployment Insurance Commission, which held an in-person hearing on September 12, 2012. (R. 19.) The purpose was to take additional evidence for a cumulative record. (R. 23.) *See* 26 M.R.S.A. § 1194(5). Mr. Swenson, Ms. Copeland, and Claimant were present and testified. (R. 19-20.) On November 1, 2012, the Commission issued a decision that set aside the Hearing Officer's decision and concluded that Claimant was disqualified from receiving benefits because he *had* been terminated for misconduct. (R. 5-9.) The Commission ordered Claimant to repay $4,266.00 in benefits received, and that the employer's experience rating record not be charged. (R. 9.) Claimant requested reconsideration, and the Commission denied the request in a decision dated November 14, 2012. (R. 1.) Claimant subsequently appealed to this Court pursuant to Maine Rule of Civil Procedure 80C.

**Standard of review**

In its appellate capacity, the Superior Court reviews agency decisions for "abuse of discretion, error of law, or findings not supported by the evidence." *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223. The burden of proof is on the petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995). "Inconsistent evidence will not render an agency decision unsupported." *Id.* "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982) (citation omitted). Rather, the court will defer to administrative conclusions when based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*

In doing so, the court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223.

Where there have been two levels of administrative decision-making, the most recent decision will be the one subject to Superior Court review, if the most recent decision-maker had *de novo* capacity and/or the authority to conduct additional fact-finding. *See Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 17, 15 A.3d 1263. Thus, the Court reviews the Commission's decision here, based on the cumulative record.

## Unemployment compensation law

An individual is disqualified from receiving unemployment benefits if he was "discharged for misconduct connected with the individual's work."[1] 26 M.R.S.A. § 1193(2). Misconduct is defined by the statute as the "culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." *Id.* § 1043(23). Certain acts or omissions are "presumed to manifest a disregard for a material interest of the employer." *Id.* § 1043(23)(A). These include: "Unreasonable violation of rules that are reasonably imposed and communicated and equitably enforced," *id.* § 1043(23)(A)(2), and "[f]ailure to exercise due care for punctuality or attendance after warnings," *id.* § 1043(23)(A)(4).

Relevant here, the statute contains an important exception: "Misconduct" may *not* be found solely on, "[a]bsenteeism caused by illness of the employee or an immediate family member if the employee made reasonable efforts to give notice of the absence and to comply with the employer's notification rules and policies." *Id.* § 1043(23)(B)(2).

"[D]isqualification from receiving the benefits of the unemployment act must be established with reference to an objective standard." *Moore v. Me. Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978). Violation of a company rule does not automatically constitute "misconduct" for purposes of the statute. *Id.* Rather, the determination entails two inquiries based on objective

---

[1] A disqualification of this nature "continues until claimant has earned 8 times the claimant's weekly benefit amount in employment by an employer." *Id.* Thus, the Commission found Claimant ineligible until he had earned $564.00 in employment. (R. 9.)

4

reasonableness: "(1) the employer must have a reasonable standard for discharge and (2) the employee must have acted unreasonably in failing to meet that standard . . . The employee's behavior is measured as the objective manifestation of intent." *Forbes-Lilley v. Me. Unemp't Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994).

## Discussion

The Commission concluded that Mr. Swenson's and Ms. Copeland's testimony was more credible than Claimant's. Thus, it found that ACS requested justification for absences and Claimant did not provide doctor's notes to that effect. (R. 6.) Although there is certainly conflicting evidence on these points, the Court cannot say that there is no competent evidence such that the record compels a contrary conclusion. *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995). "Inconsistent evidence will not render an agency decision unsupported." *Id.* Thus, the Court must accept the Commission's determination that there was a policy in place whereby points would be removed if an employee "justified" his absence with medical documentation such as a doctor's note, and that Claimant did not submit documentation of that nature.

However, the issue remains whether the Commission committed an error of law. *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223. The Commission concluded that two presumptions under 26 M.R.S.A. § 1043(23)(A) applied. First, it found that ACS showed that there was an unreasonable violation of rules that were reasonably imposed, communicated, and enforced, § 1043(23)(A)(2), and, second, it found that ACS demonstrated that Claimant failed to exercise due care for punctuality or attendance after warnings, § 1043(23)(A)(4). (R. 8.) Next, and most importantly, the Commission concluded that the illness exception contained in § 1043(23)(B)(2) did not apply, reasoning: "Although the claimant avers that his absences were due to illness, the claimant failed to notify the employer and failed to provide doctor's notes for any of his absences." (R. 8.)

Because the illness exception would override any presumptions that might otherwise apply, the most important question is whether the Commission erred in deciding that the exception did not apply. Again: Misconduct may not be found on "[a]bsenteeism caused by illness of the employee or an immediate

family member if the employee made reasonable efforts to give notice[2] of the absence and to comply with the employer's notification rules and policies." 26 M.R.S.A. § 1043(23)(B)(2).

The ultimate issue is whether Claimant's failure to provide doctor's notes amounts to a failure to "comply with the employer's notification rules and policies." § 1043(23)(B)(2). The Court is bound to accept the Commission's finding that such policy existed, but the Commission did not make specific findings as to how it worked in practice. The record indicates that it was more of an informal policy whereby a doctor's note would remain in an employee's file to be considered later if an employee was having serious attendance issues to the point of facing termination. In any event, the doctor's note policy was unrelated to the act of giving the employer actual notice of a specific unplanned absence, as contemplated by the exception.

In fact, the doctor's note policy is really not a rule – notification related or otherwise – at all. Put differently, an employee does not get fired for failing to provide a doctor's note on any given occasion. Rather, he can be fired for *absenteeism* if he has not mitigated his points by providing doctors' notes. There is no mandate or directive that an employee, who is absent due to illness, seek a doctor's care and procure a note; an employee could call in sick without seeing a doctor and take the point. Thus, there is no requirement that an employee provide a doctor's note for any illness-related absence and the record does not suggest there is.

Rather, the doctor's note policy is more aptly characterized as a mechanism to protect the employee's interest in his job and to avoid getting fired. An employee who accrues enough illness-related absences without seeking a doctor's care could presumably be fired under the policy because there would be no notes to report. Presumably, this would fall squarely within the

---

[2] As to whether Claimant "made reasonable efforts to give notice" of the absence, the Commission's finding that "the claimant failed to notify the employer" is not supported by any competent evidence on the record. To the contrary, Mr. Swenson specifically admitted that the Claimant notified ACS before the start of the shift if he was going to be absent. (R. 142-143.) There is no evidence to the contrary in the record, and the State admitted as such at the April 4 hearing.

6

illness exception and would not constitute "misconduct." A more prudent employee might seek medical care in part due to the ability to justify his absences under the policy and avoid getting fired.

In sum, the doctor's note policy is not a notification rule, or really a rule at all. An employee does not get fired for failing to produce doctor's notes – an employee can be fired for *excessive absenteeism*, which *could have been avoided* by providing doctor's notes. In this case, the Commission erred as a matter of law when it concluded that the illness exception did not apply. Claimant's absences were all "caused by illness of the employee," he made "reasonable efforts to give notice," and he complied with the employer's "notification rules and policies," because the doctor's note policy is not a notification rule or policy.

The entry is:

The Court REVERSES the decision of the Unemployment Insurance Commission. The Claimant is not required to repay the overpayment amount determined by the Commission. The employer's experience rating will be adjusted accordingly.

_4/17/13_
DATE

_____
SUPERIOR COURT JUSTICE

7

Date Filed   December 4, 2012      Androscoggin        Docket No.   AP-12-17

Action: 80C   Appeal

| Scott Nason<br>59 Foch Street<br>Lewiston, ME 04240 | vs. | Maine Unemployment Insurance<br>Commission |
|---|---|---|
| Plaintiff's Attorney | | Elizabeth Wyman, Esq.<br>Office of Attorney General<br>6 State House Station<br>Augusta, ME 04330 |

Date of
Entry

| Dec 4 | Received 12-04-12:<br>Appeal 80C filed. |
|---|---|
| Dec 14 | Received 12-14-12:<br>Entry of Appearance of Elizabeth Wyman, Esq. for Maine Unemployment Insurance Commission filed. |
| Jan 8 | Received 01-08-13:<br>Administrative Record filed. |
| Jan 8 | On 01-08-13:<br>Notice and Briefing Schedule filed.<br>Petitioner's Brief is due on or before February 19, 2013. |
| Jan 28 | Received 01-28-13:<br>Petitioner's Brief filed. |
| Feb 13 | Received 2-13-13:<br>Respondent's Brief filed. |