STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-13-18
RAC - CUM - 1/9/2014

WALTON HANSEN,

    Petitioner

ORDER

v.

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,

STATE OF MAINE
Cumberland ss. Clerk's Office

JAN 2 4 2014

**RECEIVED**

    Respondent

This matter is before the court on Petitioner Walton Hansen's appeal of the Maine

Unemployment Insurance Commission's decision to temporarily disqualify Hansen from

receiving unemployment benefits pursuant to 26 M.R.S. § 1193(2). *See* 26 M.R.S. § 1194(8); 5

M.R.S. § 11001 et seq. The Commission affirmed and adopted the Administrative Hearing

Officer's decision that the Petitioner should be temporarily disqualified from receiving

unemployment benefits, because his termination was the result of misconduct related to his

work, and that his employer's experience rating record would not be charged. This court held a

hearing on this matter on November 5, 2013.

**Factual and Procedural Background**

    At the time of the incident giving rise to this case, Hansen had worked for Hannaford

Bros. Co. ("Hannaford") for over 37 years. Hansen was a warehouse associate with Hannaford

working as a forklift operator. On July 30, 2012, Hansen and his wife were involved in an

incident that involved the theft of property from a Hannaford in Westbrook. Hansen's wife took

medication, as well as a couple of other items, placed them in her purse and walked out of the

Hannaford. Hansen's wife was apprehended after she left the store, and Hansen was later

apprehended after he left the store's restroom. Hansen and his wife were both issued summonses for theft by unauthorized taking.[1]

Bruce Southwick, the distribution center manager and the man who decided to fire Hansen, was the representative from Hannaford present at Hansen's hearing in front of the Administrative Hearing Officer on October 23, 2012. Southwick asserted that Hansen knew his wife took the medication, and that in a phone call that he placed to Hansen a few days after the incident, Hansen admitted that he saw his wife place Imodium in her purse. Southwick stated that from the video it appeared that Hansen and his wife were facing one another when she put items into her bag. According to Southwick, both parties passed the registers and made their way towards the exit, where Hansen turned to use the bathroom and his wife walked out of the store.

Southwick took notes about the phone conversation at the time of the conversation, and those notes were admitted as an exhibit at the hearing. The notes state "Wally said they were shopping and I handed her some Imodium which she put in her purse. I was going to make her pay for it before we went through the registers." (R. at 128.)

Hansen disputes that he was aware that his wife had placed items in her purse before they were apprehended. Hansen also stated that he was unaware that his wife was planning on leaving the store, and he believed that she was going to the produce section while he was in the bathroom.

Following the incident, on or around August 9, 2012, Hansen was fired. Hannaford's personal behavior policy prohibits theft of company property, and also provides that "[b]ehavior at or away from the job site that results in criminal charges or conviction, may result in discipline up to and including suspension and/or termination of employment." (R. at 138-39.) Southwick

---

[1] The State of Maine ultimately dismissed the charges against Hansen on November 29, 2012.

[2] The court notes that the rules of evidence did not apply to the administrative hearing at issue in this case.

2

stated that his decision to fire Hansen was based on still photographs of the incident taken from the video of the incident, his phone conversation with Hansen, the police report, and conversations with employees who had seen the video. Southwick did not watch the video of the incident until after he had already terminated Hansen. The video and the still photographs of the video were not admitted into evidence.

After Hansen applied for unemployment benefits, a deputy's decision was issued on September 26, 2012 finding that Hansen was disqualified from receiving unemployment benefits. Following the October 23rd hearing, the Administrative Hearing Officer issued a decision affirming the deputy's decision and finding that Hansen was disqualified from receiving unemployment benefits because he was terminated for misconduct connected with his work pursuant to 26 M.R.S. §§ 1043(23) and 1193(2).

On February 20, 2013, the Commission reviewed Hansen's appeal and affirmed and adopted the Administrative Hearing Officer's decision. Hansen's request for reconsideration was subsequently denied.

**Standard of Review**

In its appellate capacity, the court reviews agency decisions for "abuse of discretion, error of law, or findings not supported by the evidence." *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223. When the court reviews a Commission decision the court "examine[s] the record to determine whether any competent evidence supports the Commission's findings, as well as to determine whether the Commission has applied the applicable law." *Bean v. Maine Unemployment Ins. Comm'n*, 485 A.2d 630, 632-33 (Me. 1984). The burden of proof is on the petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State*

3

*Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995). "Inconsistent evidence will not render an agency decision unsupported." *Id.* "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982).

The court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223. "A court will 'not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record.'" *Kroeger v. Dep't of Environmental Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566) (quoted in Alexander, *Maine Appellate Practice* § 452 at 312 (4th ed. 2013)).

Where there have been multiple levels of administrative decision-making, the most recent decision will be the one subject to Superior Court review, if the most recent decision-maker had *de novo* capacity and/or the authority to conduct additional fact-finding. *See* Alexander, *Maine Appellate Practice* § 455(b) at 315; *see also Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 17, 15 A.3d 1263.

**Discussion**

Generally, a person who has been discharged from employment can receive unemployment benefits subject to the eligibility conditions of 26 M.R.S. § 1192. The statute provides, however, that an individual is disqualified from receiving unemployment benefits "[f]or the week in which the individual has been discharged for misconduct connected with the individual's work, . . . and disqualification continues until claimant has earned 8 times the claimant's weekly benefit amount in employment by an employer." 26 M.R.S. § 1193(2).

4

Misconduct is defined as "a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." § 1043(23). Violation of a company rule does not automatically constitute "misconduct". *Moore v. Me. Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978).

"[D]isqualification from receiving the benefits of the unemployment act must be established with reference to an objective standard." *Id.* The employer has the burden of proof to demonstrate that the employee's behavior falls under the statutory definition of misconduct. Code Me. R. 12-172, Ch. 18, § 1. To determine that an employee was discharged for misconduct pursuant to the statute the court must find that "(1) the employer must have a reasonable standard for discharge and (2) the employee must have acted unreasonably in failing to meet that standard. The employee's behavior is measured as the objective manifestation of intent." *Forbes-Lilley v. Me. Unemp't Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994)(citation omitted). On appeal, the court will not disturb a finding of unreasonable behavior "'if the Commission [could have] justifiably determine[d] that the employee's conduct was of a type, degree, or frequency that was so violative of the employer's interests that it may reasonably be deemed tantamount to an intentional disregard of those interests.'" *Id.* (quoting *Sheink v. Maine Dept. of Manpower Affairs*, 423 A.2d 519, 522 (Me. 1980.) (alterations in the original).

Certain acts or omissions are "presumed to manifest a disregard for a material interest of the employer." § 1043(23)(A). These presumptions include: "[u]nreasonable violation of rules that should be inferred to exist from common knowledge or from the nature of the employment;" and "[d]estruction or theft of things valuable to the employer or another employee . . . ." *id.* § 1043(23)(A)(3) & (11).

5

The Petitioner has stated as grounds for his appeal that he was unjustly terminated. His brief states: "[t]icket dismissed in Nov. 2012, [sic] Re-instated at Hannaford Bros. June 2013. Hannaford Bros. failed to show just cause for discharge of Walton Hansen." Petitioner's two-sentence brief does not address whether Hansen was terminated for misconduct or any problems with the Commission's decision.

At the hearing in front of this court, the Petitioner argued that Hannaford failed to bring the video of the incident or a witness with direct knowledge to the administrative hearing, and the Administrative Hearing Officer was presented with hearsay.[2] The Commission was able to make its finding without the video, however, because of Southwick's testimony, which did not have to conform to the rules of evidence. The Commission was also able to review the exhibits Southwick presented, including his notes regarding his phone conversation with Hansen. In its decision, the Commission noted, "[t]he evidence reflects that the claimant told the employer that he saw his wife put Imodium in her bag; he knew it was wrong, and he did not challenge her right then. The hearing officer relied upon this evidence which is not hearsay, rather it is an admission." (R. at 7.)

The Administrative Hearing Officer found, and the Commission adopted the finding, that it was reasonable for the store to expect that Hansen "would not be involved in an incident leading to criminal charges or an incident where the claimant's honesty with respect to the employer's interests is questionable."[3] (R. at 16.) The Commission found that this expectation was reasonable to protect the store from losses generated by theft, and to prevent employees from having an unfair advantage over other customers. (Id.)

[2] The court notes that the rules of evidence did not apply to the administrative hearing at issue in this case. See 5 M.R.S. § 9057(1) ("Unless otherwise provided by statute, agencies need not observe the rules of evidence observed by courts . . . .").

[3] Since the Commission adopted the Administrative Hearing Officer's decision, subsequent references to the Commission's findings include findings made in the Administrative Hearing Officer's decision.

6

The Commission also found that Hansen's violation of Hannaford's policy was unreasonable, since the policy was "a matter of common sense." (*Id.*) The Commission came to the conclusion that Hansen "knew that his wife took the medication at issue with the intent not to pay for the medication. The claimant also did not stop her . . . a reasonable employee would understand that such conduct would result in a breach of the employee's duties or obligations to the employer." (*Id.* at 17.)

The Commission found that Hansen's behavior also fell under the statutory presumption listed in § 1043(23)(A)(3) ("[u]nreasonable violation of rules that should be inferred to exist from common knowledge or from the nature of the employment;"). "It is common knowledge that one should not allow the taking of items without payment from one's employers by customers or one's family members." (R. at 17.)

While Hansen argued that the Administrative Hearing Officer decided to trust Southwick's account over Hansen's, such a decision was properly up to the Administrative Hearing Officer's discretion. The Law Court has held that conflicts regarding conflicting evidence "are for the fact finder to resolve." *Bean*, 485 A.2d at 634. The Commission did not find Hansen's version of events credible, because of the discrepancy between what Hansen had told Southwick and what Hansen stated at the hearing. (R. at 16-17.) It was up to the Commission's discretion to determine whether or not Hansen was credible. *See Cotton v. Maine Employment Sec. Comm'n*, 431 A.2d 637, 640 (Me. 1981) (where the Commission made a credibility determination favoring the employer over the employee the court held that as it "was uniquely the Commission's province as fact-finder, the Commission's decision cannot be held 'clearly erroneous.'").

7

In this instance, where Hannaford demonstrated to the Commission that Hansen was consciously aware of his wife's theft from Hannaford, it was reasonable for the Commission to find that Hansen's behavior constituted a culpable breach of duty and demonstrated a disregard for Hannaford's interests. Given the considerable deference that this court must give to the Commission's decision, this Court finds that there was sufficient evidence provided by Hannaford's representative to justify the Commission's decision that Hansen was terminated for misconduct. The court finds no legal error or abuse of discretion shown by the Commission.

Accordingly, the court **ORDERS** that Hansen's appeal is DENIED and the Maine Unemployment Insurance Commission's decision is AFFIRMED.

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: January 9, 2014

Hon. Roland A. Cole
Justice, Superior Court

8

| Date Filed | 04/12/2013 | Cumberland County | Docket No. | AP-13-018 |

Action _____80C Appeal_____

Walton Hansen
2 Primrose Lane
Gorham ME 04038

Unemployment Insurance Commission

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ~~Paul M. Boots Esq.~~ w/d ~~PO Box 7469~~ ~~Portland, ME 04112~~ | Elizabeth Wyman AAG |

| Date of Entry | |
|---|---|
| 2013 April 22 | Received 04/12/2013<br>Petitioner's Petition for Review of a Final Agency Action Pursuant to M.R.Civ.P. 80C filed with attached civil summary sheet. |
| May 3 | Received 5-3-13.<br>Letter from Elizabeth Wyman AAG entering her appearance appearance obo respondent and advising her position is that the court should affirm the decision of the commission |
| May 20 | Received 5-20-13.<br>Administrative record filed. |
| " " | On 5-21-13<br>Briefing schedule mailed. Petitioner's Brief due 7-1-13. |
| June 28 | Received 6-27-13.<br>Appellant's motion for enlargement of time to file brief filed. |
| " " | Paul Boots, Esq's motion to withdraw filed. |
| July 8 | Received 7-1-13<br>Paul Boot's motion to withdraw is granted. Appellant's brief is now due on 7-31-13.<br>7-8-13 copy mailed to Paul Boots and Elizabeth Wyman Esqs and to Walter Hanson |
| July 31 | Received 7-31-13.<br>Petitioner's brief filed. |
| Aug. 12 | Received 8-12-2013<br>Respondent's brief filed. |